219 P.2d 280

**LUSTY v. LUSTY.**

No. 7589.

Supreme Court of Idaho.

May 31, 1950.

Holden & Holden, Idaho Falls, and Willard C. Burton, St. Anthony, for respondent.

GIVENS, Justice.

Appellant and respondent inter-married May 29, 1941, and have no children. Following his graduation from medical college, respondent was in the Navy from 1943 to May 21, 1946, when he commenced the practice of his profession in St. Anthony, August 6, 1946.

Appellant and respondent were divorced December 19, 1947, settling their property rights by stipulation, approved by the court in the divorce decree whereby appellant

---

Robert M. Kerr, Jr., Blackfoot, Idaho, and Ira A. Huggins, Ogden, Utah, for appellant.

384

received their house and lot, household goods, etc. subject to the indebtedness thereon, and the use of a Ford car. Respondent received his office furniture, fixtures, medical supplies, etc., guns, fishing rods, and a Buick car. Appellant was to assume and pay a note to her father for $800.00 and respondent to assume and pay a note to his father for $1,000.00, and respondent was to pay appellant $250.00 per month alimony from January 1, 1948, on. Appellant has been in poor health and under a doctor's care extensively since the divorce.

Respondent began to fall behind in his alimony payments at least by the first of July, 1948. Respondent remarried November 7, 1948. November 1, 1948, appellant instituted proceedings requiring respondent to show cause why he should not be punished for contempt of court because of arrearages in payment of alimony of $800.-00 as of October, 1948. Pursuant thereto, respondent was ordered to show cause on November 19, 1948, why he was not in contempt. December 30 of the same year respondent filed a motion to modify the decree.

At the hearing on the motions January 7, 1949, appellant insisted respondent's motion to modify could not be considered until he had purged himself of contempt. The learned trial court recognized such had been the holding of this court and complied therewith by undertaking to first determine whether respondent was guilty of contempt and then, upon holding he was not, modified the decree, reducing the payments to $150.00 per month; thus hearing both matters at one sitting—evidently for the convenience of the litigants and their witnesses. Such course is, perhaps, permissible if the distinction is made between the quantum and character of evidence necessary to purge of past and present contempt and to justify modification in the future.

■ If respondent was, without his fault, unable to make the payments required in the decree, he would not be guilty of contempt. In re Hamberg, 37 Idaho 550, 217 P. 264. On the other hand, if he were financially able to pay, or his lack of ability to pay were occasioned by his own dereliction, he would be guilty of contempt. Vollmer v. Vollmer, 46 Idaho 97, 266 P. 677; Selph v. Selph, 27 Ariz. 176, 231 P. 921; Bailey v. Superior Court of Los Angeles County, 215 Cal. 548, 11 P.2d 865; Fisch v. Marler, 1 Wash.2d 698, 97 P.2d 147 at page 153.

The court found that respondent was delinquent on the first of November, 1948, including the November installment, in the sum of $900.00; that he was entitled to a credit of $322.51 for obligations against or in connection with the property originally awarded appellant, paid by him after the divorce decree on the theory they were lienable items or encumbrances. It is

doubtful if respondent is entitled to such credits, because appellant was granted the property decreed to her, subject to the indebtedness thereon, and these payments were made by respondent without appellant's initial knowledge or consent. However, conceding respondent was entitled to credit therefor, and certain articles awarded respondent which he contended appellant had not turned over to him, though she denied purposely depriving him thereof, and giving him the benefit of all his contentions in these respects, the court found that as of March 1, 1949, respondent was delinquent in the sum of $976.49 for failure to pay as required by the original decree. The court made these exculpatory findings:

"3. That the record establishes that the defendant has suffered a substantial decline in income in 1948, as compared with 1947 and since the aforementioned decree was made and entered, and that the defendant has been harried by debts long past due. That the aforementioned decline in income of this defendant is material, substantial and permanent.

"4. That there were two physicians and surgeons, including defendant practicing their profession in St. Anthony, Idaho in 1947, and until September or October, 1948, when a third doctor entered the practice there, and it is reasonable to assume that defendant's practice will be decreased somewhat, and that the decline in his income will be more or less permanent.

"5. That the default of the defendant in making the monthly alimony payments, as provided for in said divorce decree, is not, and has not been, contemptuous.

"6. That the above named defendant has not been adjudged guilty of contempt and has offered timely excuse for his failure to make said alimony payments."

The court did not make a specific finding that respondent was unable to pay, though evidently intending that to be the effect of the findings thus drawn. Considering them to be such, they are clearly and obviously insufficient as findings because they do not find that by the decline in income or debt harrassment he was unable to pay the paramount debt imposed by this decree. Furthermore, considered and construed as findings of respondent's inability to pay, without respondent's fault, they are unsupported by and contrary to respondent's own evidence when the nature of the original decree is correctly considered.

Respondent's analysis [1] of his income and expenses not only does not show he was unable to pay, but does show he had the ability and possessed sufficiently adequate funds, aside from potentional credit, not disclosed, to pay. Vollmer v. Vollmer, supra; Smith v. Smith, Sup., 11 N.Y.S.2d 1015; Bice v. Bice, 138 Wash. 598, 244 P. 1000. The burden of proof was on respondent *to prove his inability to pay*. Armijo v. Armijo, 29 N.M. 15, 217 P. 623; Phillips v. Phillips, 165 Wash. 616, 6 P.2d 61.

---

[1] See note 1 on page 386.

This was not met by merely showing decreased income or increased expenses. He had a good balance by his own reckoning.

The result of respondent's analysis is strengthened by appellant's analysis.[2] It is not a question of resolving disputed questions of fact, because we take respond-

---

1. "The evidence disclosed the following income and cash receipts in 1948, as compared with 1947 income and receipts:

| | |
|---|---:|
| 1947—Total business | $29,979.10 |
| 1948—Total business | 19,628.52 |
| A reduction in 1948 of | 10,350.58 |

(The reduction in business in 1948 will reflect in lower collections in 1949)

| | |
|---|---:|
| Cash receipts—1947 | 21,155.56 |
| Cash receipts—1948 | 18,000.15 |
| A reduction in 1948 of | 3,155.41 |

The income received by respondent was disbursed as follows:

| | | |
|---|---:|---:|
| Total receipts | | 18,000.15 |
| Total operating expense | $ 9,488.65 | |
| Stamps, express charges, and misc. expense | 209.00 | |
| 1947 checks, paid in 1948, less balance on hand Jan. 1, 1948 | 286.03 | |
| Paid on attorney fees during 1948 | 275.00 | |
| Income Tax, 1948 | 407.11 | |
| Insurance premiums paid, on appellant is still beneficiary | 1,548.92 | |
| Paid to appellant, as alimony, during 1948 | 2,450.00 | |
| Total expenses, other than living expense | 14,664.71 | 14,664.71 |
| Balance left for respondent | | 3,335.44 |

The fixed living expenses of respondent amount to $466.00 per month.

The outstanding indebtedness of respondent, as of December 31, 1948, amounted to $7,181.92."

---

2.

| "January | Total Business 1947 | Total Business 1948 | Total Cash 1947 | Total Cash 1948 | Expenses 1947 | Expenses 1948 |
|---|---:|---:|---:|---:|---:|---:|
| "January | —$ 3,185.75 | $ 1,980.00 | $ 1,775.75 | $ 1,644.55 | $ 561.24 | $ 873.42 |
| February | — 2,144.75 | 1,423.50 | 1,544.50 | 1,636.50 | 1,156.28 | 764.58 |
| March | — 2,692.50 | 1,215.50 | 1,707.50 | 1,103.75 | 900.48 | 1,514.18 |
| April | — 1,923.50 | 1,898.00 | 2,217.00 | 1,244.79 | 722.72 | 486.75 |
| May | — 1,416.50 | 1,810.00 | 1,352.63 | 1,679.50 | 500.79 | 993.79 |
| June | — 2,680.25 | 1,901.00 | 1,290.50 | 1,602.25 | 804.99 | 699.54 |
| July | — 3,185.20 | 1,521.50 | 1,666.00 | 1,453.36 | 698.09 | 742.03 |
| August | — 2,073.50 | 2,140.00 | 1,680.00 | 1,377.50 | 1,125.76 | 963.15 |
| September | — 3,490.75 | 1,452.52 | 1,810.50 | 2,049.50 | 664.33 | 426.54 |
| October | — 1,559.75 | 1,608.50 | 2,411.83 | 1,763.50 | 1,064.45 | 959.86 |
| November | — 2,496.50 | 1,109.00 | 1,976.50 | 1,239.00 | 3,615.68 | 657.98 |
| December | — 1,623.40 | 1,568.50 | 1,772.85 | 1,206.50 | 901.08 | 816.00 |
| Total | —$28,473.31 | $19,628.02 | $21,205.56 | $18,000.70 | $12,715.89 | $9,897.82" |

ent's own figures at their face value. Though respondent had been harried by debts long past due, it does not appear that any other judgment had been rendered against him, except the decree for alimony. It, therefore, constituted the highest form of debt which he owed and it was not within his discretion to fail to pay it, and pay and prefer other debts. Smith v. Superior Court of Yuba County, 89 Cal.App. 177, 264 P. 573 at page 580.

■ After a decree awarding alimony, and particularly when based on a voluntary stipulation by the husband, Stafford v. Stafford, 18 Wash.2d 775, 140 P.2d 545, has been entered requiring him to pay alimony, compliance therewith does not depend upon his volition and does not present the same problem as an initial determination. It is a positive decree; all pros and cons and ability and necessities having been adjudicated and determined, and until modified in proper proceedings, is an absolute commandment by the court and imperative requirement. Dissatisfaction therewith and regret over his stipulated liberality are not grounds for failure to comply. Chaffee v. Chaffee, 63 Utah 261, 225 P. 76.

■ Much is made of the helpless position respondent would be in if he could not seek a modification until he had purged himself of contempt, his hands thereby being tied. If respondent presently or prospectively at any time felt the decree was excessive, it was incumbent upon him to immediately apply for modification, State ex rel. Murphy v. Second Judicial Dist. Court in and for Silver Bow County, 99 Mont. 209, 41 P.2d 1113, not to default and take the chance of showing, when called to account for failure to pay, he did not have the ability to pay. Bradshaw v. Bradshaw, 23 Tenn.App. 359, 133 S.W.2d 617. If he takes such chance and his own evidence shows he had the ability to pay, and that he alone is responsible for his failure to pay, and he subjects himself to the result of his own recalcitrance—he alone is to blame—not the court, or his wife or anyone else. Johnson v. Johnson, 148 Kan. 682, 84 P.2d 888. The court was open to him at any time after the rendition of the original decree to seek modification thereof. Section 32-706, I.C. Yet, at a time when he was taking—by his own admission—rather extensive trips not in the practice of his profession, though in connection therewith; entertaining on rather an extensive though not a lavish scale, and when he contends his living expenses were legitimately $466.00 per month when appellant's should only be $65.00 per month —more than seven times greater, an unreasonable disparity—Kelly v. Kelly, 78 U.S.App.D.C. 97, 137 F.2d 254; Ex parte Elliott, 23 Cal.App.2d 346, 73 P.2d 284; Karteus v. Karteus, 67 N.D. 297, 272 N.W. 185; Meisner v. Meisner, 220 Minn. 559, 20 N.W.2d 486, he waited until he was

388

called to account under the order to show cause before he sought a modification.

Regardless of what might be considered as to prospective decline in his practice by reason of another doctor coming to St. Anthony, it is as plausible to infer his decrease in income in 1948 was due as much to his laxity and perhaps loss of appellant's assistance as it was to conditions over which he had no control. The advent of another physician in St. Anthony in October, 1948, could not have affected respondent's practice prior thereto and yet he was delinquent at least since the first of July.

No doubt it was laudable for respondent to keep himself well insured and he had a right to get married again, but when he entered into the second marriage, he knew he had certain obligations toward his former wife and this debt was just as binding and just as imperative as any other debt or debts he paid during 1948. Humbird v. Humbird, 42 Idaho 29, 243 P. 827; Keim v. Keim, 83 Colo. 277, 263 P. 716. Furthermore, respondent was in arrears prior to his marriage in November 1948, when for the months of June, July, August and September, he had received $6,482.31 as against $6,447.00 for the same period in 1947. Thus, during those months when he was in arrears, he had received $35.65 more in 1948 than he had in 1947 for the same period.

The burden was upon respondent to show he did not have the ability to pay. It would unduly extend this opinion to set forth all the details of respondent's testimony, but from a careful examination thereof, it clearly shows he has not met that burden, and consequently, did not purge himself of contempt. Ekblad v. Ekblad, 207 Minn. 346, 291 N.W. 511. Therefore, he was not entitled to urge a modification of the decree, nor may he do so until he has complied with the terms of the original decree. Hoagland v. Hoagland, 67 Idaho 67 at page 69, 170 P.2d 609.

Inasmuch as the cause is to be reversed and remanded, we do not consider or express any opinion as to whether there should be any modification if and when respondent may so ask. Since the option to pay a lump sum award was not exercised, we need not discuss it.

The findings of fact, conclusions of law and decree giving appellant her costs, if any, in excess of $50.00 theretofore allowed, were dated, that is, evidently signed, March 21 and were filed in the Clerk's office March 28.

Appellant's cost bill subscribed and sworn to April 6 was filed April 9. April 25, respondent moved to strike the cost bill as not filed within five days after "notice of the decision of the court" as required by Section 12-113, I.C. The Findings and Conclusions of law are the "decision" referred to in Section 12-113, I.C. Harris v. Chapman, 51 Idaho 283 at page 298-299, 5 P.2d 733.

The record is silent as to when appellant had notice of the decision. The five days do not begin from the filing of the decision, but from the date of "notice of the decision." Harris v. Chapman, supra [51 Idaho 283, 5 P.2d 738]. Respondent's motion to strike was based solely on the Memorandum of Costs and Disbursements, Findings of Fact, Conclusions of Law and Decree and none of these discloses when or that appellant had notice, more than five days prior to April 9, and is thus insufficient to show the cost bill should have been stricken.

The order striking the cost bill was, therefore, unjustified and the cost bill should be reinstated and enforced.

Judgment reversed and cause remanded with instructions to take further proceedings enforcing the original decree as augmented by the Order for Costs, in accordance with this opinion and the statutes made and provided. Costs awarded to appellant.

PORTER and KEETON, JJ., and GLENNON and THATCHER, District Judges, concur.

GLENNON and THATCHER, District Judges, sat in place of HOLDEN, C. J., and TAYLOR, J., who deemed themselves disqualified.