514 P.2d 742

**Arthur BUCK, Petitioner,**

v.

**Robert L. MYERS, a Judge of the Superior Court of the State of Arizona, Respondent;**

**Richard L. HARRIS, Real Party in Interest.**

**No. 1 CA–CIV 2423.**

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 11, 1973.

572

Meyer, Wortman & Harrell, P. C., by William A. Harrell, Phoenix, for petitioner.

J. Douglas McVay, Phoenix, for respondents and real party in interest.

## OPINION

JACOBSON, Chief Judge, Division 1.

This special action raises the interesting question of whether a litigant can avoid the sanction of contempt by *prima facie* compliance with a previous judgment of the superior court.

This special action arose from the seeking of a post-judgment contempt order wherein petitioner Arthur Buck sought to hold Real Party in Interest, Richard Harris, Superintendent of Schools for Maricopa County, in contempt for failure to obey a judgment directing Harris to issue to petitioner a contract of employment with the Williams Air Force Base Accommodation School for the school year 1972–73.

The underlying action out of which the judgment sought to be enforced by contempt arose was instituted by petitioner seeking a determination that he, as a con-

tinuing teacher[1] had been wrongfully terminated at the end of the school year in 1972. This action was in the nature of mandamus to compel Superintendent Harris to renew his contract with the Williams Air Force Base Accommodation School,[2] an eighth grade elementary school. Petitioner, for seven years prior to his termination, had been employed at the Williams Air Force Base School as a physical education teacher and coach. In this action on December 5, 1972, the trial court entered a judgment in petitioner's favor, the pertinent portions of which provided:

"It is Therefore Ordered, Adjudged and Decreed that the Plaintiff, Arthur W. Buck, be issued forthwith a contract of employment with the Williams Air Force Base Accommodation School for the year 1972–73 and be fully reinstated with all the rights and privileges of said employment."

Following entry of this judgment Superintendent Harris moved for a new trial, one of the bases being newly discovered evidence. This alleged newly discovered evidence was that Harris had ascertained after trial that petitioner had allowed his provisional elementary teaching certificate to lapse and thus would not be in a position to teach such grade, grades or subjects as may be assigned to him under the terms of the standing teaching contract issued at Williams Air Force Base. This standard teaching contract in pertinent part provides:

"That the said [teacher] who holds a legal certificate to teach in the public elementary or high schools of Arizona during the period of this contract, *hereby agrees to teach such grade, grades, or subjects in the public elementary or high school of said district as the . . . superintendent may assign to him . . . .*" (Emphasis added.)

To understand the supposed significance to this alleged evidence of lack of certification it is necessary to point out that prior to January 1, 1972, the petitioner held two certificates: a provisional elementary certificate and a secondary certificate. Under the elementary certificate petitioner was certified to teach any subject from kindergarten through the 6th grade. Under the secondary certificate he was certified to teach physical education from kindergarten through the eighth grade, but was limited to teaching any other subject in the seventh through the twelfth grade only. It was the elementary certificate which was allowed to lapse, thus disqualifying petitioner from teaching subjects other than physical education in grades kindergarten through sixth. Superintendent Harris thus argued in his motion for new trial that petitioner could not comply with the terms of the standard contract form as he might possibly be assigned to teach a subject other than physical education in one of the lower grades.

The motion for new trial was denied and no appeal was taken from the judgment of December 5, 1972 which therefore became final.

On January 18, 1972, in supposed compliance with the December 5, 1972 judgment, Superintendent Harris tendered to petitioner a contract of employment. This contract on its face was only for the period of January 18, 1973, through the balance of the school year and thus did not compensate petitioner for the first half of the school year. Petitioner refused to sign this contract. On February 27, 1973, Superintendent Harris tendered two additional contracts to petitioner, one for the full school year and one having an effective date of February 28, 1973. This tender was accompanied by a letter from Superintendent Harris that made it clear that the full term contract would only be approved

---

1. A continuing teacher is one under the teacher tenure law having the right to automatic renewal of his contract of employment pursuant to A.R.S. § 15–251 et seq.

2. Under a contract with the United States Government, the Superintendent of Schools for Maricopa County acts as the Board of Trustees for the school located at this military establishment.

if petitioner could present satisfactory evidence that he held an elementary certification authorizing him to teach any subject from kindergarten through the sixth grade (a condition that the petitioner could not comply with since his elementary certificate had lapsed, a fact of which Superintendent Harris was well aware.) This same letter instructed petitioner that if the deficiency of the lapsed certificate had been corrected between the time it was allowed to lapse and the date of the letter, then the short term contract was to be executed. (Again, a requirement that all parties were aware could not be fulfilled.)

Petitioner immediately sought contempt charges against the superintendent to enforce his judgment of December 5, 1972.

At the contempt hearing, the facts previously related were brought forth, and in addition, both the principal of the school involved and Superintendent Harris testified that the only opening at the Williams Air Force Base Accommodation School for petitioner was that of a sixth grade teacher which petitioner was unable to fill because of his lack of certification. It was also brought out that if Superintendent Harris had requested the State Board of Education to issue to petitioner an emergency elementary certificate it would have done so. After hearing the evidence, the trial court refused to find Superintendent Harris in contempt. Petitioner then sought review of this order by way of special action petition in this court.

Following the hearing of oral arguments on petitioner's special action, this court entered an order accepting jurisdiction and granting the parties time to file supplemental briefs. Supplemental briefs have been filed in accordance with this order.

■ The sole issue in this court is whether the respondent trial judge failed to perform a duty required under the law to enforce the previous mandate of the trial court. A special action in the nature of mandamus is the proper method to review this issue. Butler v. Butler, 23 Utah 2d 259, 461 P.2d 727 (1969).

■ To determine this issue it is necessary to ascertain the scope of the trial court's judgment of December 5, 1972. Superintendent Harris argues that this judgment has only the limited effect of ordering the renewal of petitioner's contract for the school year 1972–73, but does not relieve the petitioner from the requirement that he be able to perform duties *not previously required of him.* The argument continues that since Superintendent Harris tendered to petitioner contracts of employment conditioned upon his being able to perform these other duties, he has complied with the mandate of the judgment and may not be held in contempt. We disagree. The judgment on its face requires not only that petitioner be issued a contract of employment, but also requires that he "be *reinstated* with all the rights and privileges of said employment." While it might be argued that the reinstatement language of the judgment exceeds the scope of the issues before the trial court and in this sense is erroneous, this judgment was allowed to become final. A final judgment even though erroneous may be enforced by contempt. Application of Finn, 155 Cal. App.2d 705, 318 P.2d 816 (1957); Mathison v. Felton, 90 Idaho 87, 408 P.2d 457 (1965); Dike v. Dike, 75 Wash.2d 1, 448 P.2d 490 (1968); 17 C.J.S. Contempt § 14, p. 42.

■ With this finality, Superintendent Harris was ordered to perform two acts—forthwith issue petitioner a contract and reinstate petitioner as a teacher at Williams Air Force Base. The superintendent may have complied with the first step of this judgment—issuing the petitioner a contract—but there is no dispute that he has not complied with the second step—reinstating petitioner as a teacher. We are reinforced in our conclusion that the court's judgment was a two-step affair requiring reinstatement from the fact that the trial court considered Superintendent Harris's argument on inability to reinstate in his motion for a new trial and rejected the same.

This brings us to Superintendent Harris's basic argument in this special action, that is, that he is unable to comply with the reinstatement portion of the judgment because of two specific statutes, A.R.S. § 15–234 and A.R.S. § 15–443 subsec. B, and thus cannot be punished for contempt.

These legislative enactments provide:

"A.R.S. § 15–234: No warrant shall be drawn in payment of a teacher's salary by the county superintendent, unless the teacher is the holder of a legal certificate in force for the full term for which payment is demanded."

And,

"A.R.S. § 15–443, subsec. B: No teacher shall be employed who has not received a certificate for teaching, granted by the proper authorities."

■ It is undoubtedly the general rule that in order for a violation of a judgment to constitute contempt, the thing ordered to be done must be within the power of the person against whom the judgment is directed. Van Hoosear v. Railroad Commission of California, 189 Cal. 228, 207 P. 903 (1922). However, a corollary to this general rule is that where the alleged contemnor has voluntarily brought upon himself the inability to obey the court's order, he cannot avail himself of a plea of inability to obey as a defense to the charge of contempt. Laing v. Commonwealth, 205 Va. 511, 137 S.E.2d 896 (1964); 17 Am. Jur.2d, p. 53, § 51.

■ When viewed in this light, Superintendent Harris's reliance upon the two above-quoted statutes as divesting him of the power to comply with the court's mandate is misplaced. These two statutory provisions merely require that before a teacher be hired or paid, the teacher must hold a valid teaching certificate. The petitioner in this case held such a valid teaching certificate authorizing him to perform the same services for the Williams Air Force Base Accommodation School as he had performed for the last seven years. It was only when the superintendent required that he perform *different services* that the question of the validity of his teaching certificate becomes material. It is apparent that Superintendent Harris could have complied with the court's mandate by "reinstating" the petitioner in his former position as a physical education teacher and petitioner was under no legal infirmity from occupying that position. Superintendent Harris's failure to do so as a matter of law can be classified as voluntary and willful, and thus contemptuous. We do not mean to intimate that Superintendent Harris was intentionally being contemptuous of the court's order. Nor, do we mean to intimate that it would not be difficult for Superintendent Harris to obey the court's order in view of his concern about filling the position formerly held by the petitioner to effect continuity of instruction at the facility under his jurisdiction, or that financial hardship to the school might not occur. But difficulty or hardship in obeying a court's order is not to be equated with inability to obey. In this regard, there is no showing that the individual hired to fill petitioner's former position could not have been utilized to fill the position as sixth grade teacher offered to petitioner, thus opening the physical education instruction position to the petitioner.

The court by its judgment of December 4, 1972, determined that petitioner had been wrongfully discharged from his position as a teacher at Williams Air Force Base in contravention of the teacher tenure laws of the state of Arizona. To allow the superintendent to avoid the consequences of this wrongful act by imposing conditions upon the teacher *not required by his former employment* would thwart the effectiveness of the Teacher Tenure Act.

We have been informed that Superintendent Harris has instituted an independent action against petitioner sounding in declaratory judgment raising the lack of certification of petitioner. While this court has been favored with a copy of the complaint in this declaratory judgment action, attached as an exhibit to petitioner's special action, we do not have the other pertinent pleadings in this action and

therefore are unable to ascertain the specific issues in that litigation. However, insofar as this declaratory judgment action seeks to determine issues covered by this opinion, such an action would clearly be improper.

Upon issuance of our mandate in this matter, the respondent trial judge is directed to take such steps as are necessary to enforce the previous judgment of the court and to impose such sanctions against respondent Harris as the trial court, in its discretion, may deem proper to compel obedience to its judgment.

Because of the passage of time, by this mandate we do not preclude the trial court, in the exercise of its discretion and upon proper application of securing enforcement of its previous judgment by a money award.

EUBANK, P. J., and HAIRE, J., concur.