**In re MARC RICH & CO., A.G., A Swiss Corporation.**

**MARC RICH & CO., A.G., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 1256, 1257, Dockets 84–6033, 84–6075.**

United States Court of Appeals, Second Circuit.

Argued May 10, 1984.

Decided June 11, 1984.

See also, 2d Cir., 731 F.2d 1032.

Peter L. Zimroth, New York City (Boris Kostelanetz, Lawrence S. Feld, Edward M. Spiro, Kostelanetz & Ritholz, New York City, of counsel), for appellant.

Morris Weinberg, Jr., Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, New York City, Ronald W. Kleinman, U.S. Dept. of State, Washington, D.C., of counsel), for appellee.

Robert Herzstein, Washington, D.C. (Hardrian R. Katz, Stephan E. Becker, Arnold & Porter, Washington, D.C., of counsel), for amicus curiae Government of Switzerland.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BONSAL, District Judge.[*]

OAKES, Circuit Judge:

Marc Rich & Co., A.G. ("Rich"), appeals from the denial by the United States District Court for the Southern District of New York, Leonard B. Sand, Judge, of its motion to terminate fines of $50,000 per day as sanctions for civil contempt. The fines were imposed by the district court on September 13, 1982, for Rich's failure to comply with a grand jury subpoena duces tecum, which required Rich to produce all documents "pertaining to any and all foreign and domestic oil transactions for the years 1980 and 1981." In May, 1983, the court of appeals affirmed the court's judgment of contempt. *In re Marc Rich & Co.,*

[*] Of the Southern District of New York, sitting by designation.

*A.G.*, 707 F.2d 663 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983). The only issue raised and decided on that appeal was whether the district court had personal jurisdiction over Rich.

In June, 1983, Rich moved to vacate the contempt judgment on the ground that Swiss court orders prohibited compliance with the subpoena. The motion was denied, and Rich appealed. Shortly thereafter, in August, 1983, Rich agreed to comply with the subpoena, withdrew its appeal with prejudice, and agreed "not [to] raise at any time in any court the claim that any law of Switzerland prevents the Company from producing the documents ...." This agreement became part of the court's order.

Subsequently Swiss authorities ordered Rich not to comply with the subpoena, and, on three occasions (August 13, 1983, November 22, 1983, and February 9, 1984) Swiss officials seized various documents responsive to the subpoena. In response, Rich moved three more times to vacate the judgment of contempt. The present case involves the last two of these motions. Rich argues that it should be released of contempt because of the "unequivocal statements and compulsory actions of the Swiss government prohibiting and preventing" its further compliance with the subpoena.

The Government of Switzerland has appeared in this appeal as amicus curiae on behalf of Rich. The Swiss have taken the position that there is a clear conflict between the public laws of Switzerland and those of the United States, and that efforts to force compliance with the subpoena despite Swiss law violate Swiss sovereignty and international comity. The Government of Switzerland maintains, however, that the United States can obtain documents in its possession or under its control upon application under the Swiss Federal Act on Mutual Assistance in Criminal Matters (1981). It has apparently made known this position to the United States Department of State and others.

■■■ Civil contempt is a coercive sanction, and thus a person held in civil contempt must be able to comply with the court order at issue. *E.g., United States v. Rylander,* 75 L.Ed.2d 521, 103 S.Ct. 1548, 1552, 460 U.S. 752 (1983). Individuals unable to comply, because of their own bad faith actions or otherwise, may be subject to criminal sanctions, but may not be held in civil contempt. The burden of proving "plainly and unmistakably" that compliance is impossible rests with the contemnor. *Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 59 (2d Cir.1984) (quoting *Hodgson v. Hotard,* 436 F.2d 1110, 1116 (5th Cir.1971)); *see also Rylander,* 103 S.Ct. at 1552.

We face two different issues in deciding whether Rich should continue to be held in civil contempt: (1) Has Rich proved that it is no longer in possession or control of documents responsive to the subpoena and thus no longer able to comply? (2) If Rich still possesses or controls such documents, are Swiss laws or orders sufficient to excuse noncompliance and thus to serve as the basis for vacating the judgment of contempt?

■■■ Prior to the February 9 seizure by the Swiss, Rich had clearly not demonstrated that further compliance with the subpoena was impossible. Judge Sand made it perfectly clear that Rich simply had to produce appropriate affidavits attesting to the impossibility of compliance and the judgment would be lifted. Rich has never done so. Thus, we think the district court was correct in its ruling of January 27, 1984, denying Rich's motion to vacate. Moreover, we think that Judge Sand properly declined to rule on whether Rich's situation had changed after the February seizure. There was a pending appeal of his earlier ruling, which involved at least some of the same issues, and Rich would not be prejudiced by waiting for consideration of its post-February 9 position.

■■■ Finally, we think that Rich is barred from relying on Swiss law or orders of the Swiss Government as an excuse for its

noncompliance with the subpoena. In the first place, Rich's agreement of August, 1983, stated unequivocally that it would not rely on Swiss law in refusing to comply with the subpoena. Rich's argument that the parties never contemplated that the Swiss Government would seize the documents or "issue its own orders" is not persuasive. We think any orders of the Swiss authorities are fairly covered by the 1983 waiver. Of course, if the seizures have made further compliance impossible, the agreement would not bar Rich from asserting that fact as a defense.

In addition, consideration of Swiss law and orders is now barred by res judicata. Rich did not raise the issue of Swiss law on its first appeal to the Second Circuit, 707 F.2d 663, and thus the district court's ruling on this matter stands. The effect of direct Swiss orders is a separate issue, but res judicata applies nonetheless because of Rich's failure to appeal other rulings. Rich's first motion to vacate, in June, 1983, was based on an order of the Swiss courts. Rich withdrew its appeal on this issue with prejudice. In addition, Rich did not appeal the denial of its second motion to vacate in October, 1983, in which the district court again rejected Swiss orders as an excuse for noncompliance. Since Rich has had numerous opportunities to bring this issue to the court of appeals and has not done so, the principle of res judicata bars it from doing so now.

Recognizing that on the merits the question of noncompliance with the subpoena at the present time is a close one, that the circumstances since the issuance of the order of January 27, 1984, may have changed, and that there are ongoing negotiations between the governments of Switzerland and the United States, we remand the cause for the district court's consideration of the motion to vacate made following the February seizure of documents, and for an evidentiary hearing on the question whether all of the documents Rich has not produced that are subject to the subpoena are now or have been since February 9, 1984, or some other date, in the possession of the Swiss Government.

Orders of January 27, 1984, and March 8, 1984, affirmed; cause remanded.