757 P.2d 1231

**Melanie D. NAB (Graham), Plaintiff–Respondent,**

v.

**Randy D. NAB, Defendant–Appellant.**

**No. 16876.**

Court of Appeals of Idaho.

June 21, 1988.

---

Randy D. Nab, pro se.

Alan C. Goodman, Rupert, for plaintiff-respondent.

WALTERS, Chief Judge.

This is an appeal from a district court decision which upheld a magistrate's order denying a motion to modify the child support provision of a divorce decree. Two principal issues are raised: (1) whether the trial court should refuse to consider a motion to modify a child support order because the movant is in arrears in the payment of support; and (2) whether the court should relieve a parent from paying child support when the parent's ability to pay has been reduced because the parent is incarcerated in the penitentiary on a criminal offense. We vacate, in part, the district court's decision upholding the magistrate's order, and we remand this case for further consideration by the magistrate.

On November 21, 1983, Melanie Nab (now Melanie Graham) was granted a divorce by default from Randy Nab. The decree awarded Nab and Graham joint legal custody of their infant daughter. Physical custody of the child was granted to Graham subject to reasonable visitation by Nab. The court ordered Nab to pay $200 per month in child support.

In the meantime, Nab had been arrested and charged with an unrelated criminal offense. He was subsequently convicted and received an eight-year indeterminate sentence. The judgment and sentence were affirmed on appeal. *See State v. Nab*, 113 Idaho 168, 742 P.2d 423 (Ct.App.1987). Nab's incarceration began on July 2, 1985.

On October 22, 1986, Nab filed a motion in district court to amend the divorce decree. Nab sought retroactive suspension of child support to July 2, 1985, and continued suspension until 60 days after his release, reduction of support thereafter to $100 per month, an opportunity to make up arrearages at $50 per month, an order requiring Graham to keep Nab advised of his daughter's place of residence, permission to appoint his mother as a "designee" to transport the child to the state penitentiary for monthly weekend visits, and custody of the child every other weekend following his release. Graham responded by moving to quash Nab's motion and by requesting an order to show cause why Nab should not be held in contempt of court for failing to pay child support.

Following a consolidated hearing on these motions, a magistrate declined to quash Nab's motion. However, the magistrate found that, before being incarcerated, Nab had diverted funds to his legal defense and other purposes instead of making child support payments. The court concluded that Nab was in contempt of court for his failure to pay child support prior to his incarceration. Ruling that Nab's contempt status precluded him from obtaining a modification of the support obligation, the court denied Nab's motion to modify the support during Nab's incarceration. The

court concluded that Nab's requests for an arrearage payment schedule and for custody following incarceration were premature. The court denied the request for visitation at the prison, concluding that it would not be in the best interests of the child. The magistrate did order Graham to keep Nab advised of her address.

■ Nab appealed the magistrate's decision to the district court. Graham cross-appealed. She contended that her motion to quash should have been granted, that she had not received timely notice of the modification hearing before the magistrate, and that attorney fees should have been awarded to her. Those appeals were consolidated with a "writ of certiorari" filed by Nab. *See generally In re Contempt of Reeves*, 112 Idaho 574, 733 P.2d 795 (Ct. App.1987) (discussing appellate procedure for review of contempt orders). The district court affirmed the magistrate's decision in all respects. Nab now appeals to this Court. Graham has not cross-appealed. We review the magistrate's findings and conclusions independently of the district court's decision. *See Robinson v. Joint School Dist. No. 331*, 105 Idaho 487, 670 P.2d 894 (1983).

I

We begin our analysis by reviewing the magistrate's conclusion that Nab's failure to make past child support payments should bar modification of the amount of support required of him while incarcerated. On appeal, Nab does not contend that he was current in his support obligation when he was incarcerated on July 2, 1985. Instead he relies primarily on the magistrate's conclusion that "you [Nab] do not have the present ability to pay support." Nab asserts that under such circumstances refusal to consider his motion to modify is an inappropriate civil contempt "sanction."

Although Nab characterizes the court's refusal as a "sanction," essentially the court ruled that, as a matter of law, the court could not entertain Nab's request to modify the decree, until Nab's contempt was purged. The court's approach was akin to a determination that Nab lacked "standing" to seek the modification. While it may appear largely to be a matter of semantics, as explained below we believe the proper query is not into the issue of standing, but is simply whether Nab's contempt status precluded the court from ordering a modification of the decree.

■ Nab's continuing duty to his child is clear. Each parent has a duty to care for nonemancipated children. *See* I.C. § 32–1002. Factors to be considered when ordering the payment of a reasonable amount for child support include the financial resources of the child; the financial resources, needs and obligations of the parents; the standard of living the child enjoyed during the marriage; the physical, emotional, and educational needs of the child; and the availability of medical coverage for the child. I.C. § 32–706.

A child support decree may be modified by the trial court, but:

> The provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial and material change of circumstances.

I.C. § 32–709. *See also Embree v. Embree*, 85 Idaho 443, 380 P.2d 216 (1963).

A

■ First we examine the magistrate's conclusion that Nab was in contempt of court. An act of contempt may be either direct or indirect. A direct contempt occurs in the immediate presence of the court. An indirect contempt occurs outside the presence of the court. *Jones v. Jones*, 91 Idaho 578, 428 P.2d 497 (1967). In an indirect contempt proceeding the court acquires no jurisdiction to proceed unless a sufficient affidavit is presented. *Id.; see* I.C. § 7–603. The initiating affidavit must allege that the contemnor or his attorney

has been served with or has actual knowledge of the order and that the order has been violated. *Jones v. Jones, supra.* Nab contends the affidavit presented by Graham in this case was insufficient to initiate a proceeding for indirect contempt.[1]

■ In her affidavit, Graham averred that Nab had been served with the default divorce decree or had actual knowledge of it. Further, she alleged that she had received no child support payments from Nab since the order was entered and that accrued payments totaling $7200 were due. Although Nab later presented evidence that he had failed to read the decree upon receipt, he did not deny having been lawfully served with a copy of the decree. We hold that the affidavit presented a prima facie case for contempt and was sufficient to provide the magistrate with jurisdiction. If Nab was financially able to pay, or his lack of ability to pay was occasioned by his own dereliction, he would be guilty of contempt. *See Lusty v. Lusty,* 70 Idaho 382, 219 P.2d 280 (1950).

■ Nab also asserts that the written findings of the magistrate were inadequate to support his conclusion that Nab was in contempt of court. Nab submits that the court failed to find that he was able to pay support prior to his incarceration. He directs our attention to cases from other jurisdictions which require the court to make a specific finding of ability to comply with an order of the court as a predicate to an adjudication of contempt. *See Ellison v. Mummert,* 459 P.2d 306 (Ariz.1969); *People v. Razatos,* 699 P.2d 970 (Colo. 1985); *Wright v. District Court,* 192 Colo. 553, 561 P.2d 15 (1977); *Marshall v. Marshall,* 191 Colo. 165, 551 P.2d 709 (1976); *McVay v. Johnson,* 727 P.2d 416 (Colo.App. 1986). Even assuming such a rule need be announced in Idaho, our Supreme Court

has held that where the record is clear and yields an obvious answer to the relevant question, the absence of findings and conclusions may be disregarded by an appellate court. *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982).

■ Here, the court orally pronounced that Nab had diverted funds to his criminal defense instead of paying child support. The court found Nab in contempt "for his failure to pay child support...." The record reflects that Nab was intermittently employed prior to his incarceration, that with the assistance of family members he had paid some of his attorney fees and that he had acquired a new motor vehicle. We deem the record sufficiently clear to preclude the necessity of additional findings by the trial court regarding Nab's ability to pay support. We find no error in the court's conclusion that Nab was in contempt of court.

## B

Alternatively, Nab contends the "sanction" imposed by the court for that act of contempt constitutes an abuse of discretion. Before considering his argument, we briefly review the alternative functions of a contempt proceeding.

A contempt citation may be civil or criminal.

> The distinction between civil and criminal contempt lies not so much in the penalties imposed as in the purpose. Where the primary purpose of the penalty is to coerce compliance with an order of the court, the contempt is civil. Where the goal is to punish the contemnor for past acts, the contempt is criminal.

*In Re Contempt of Reeves,* 112 Idaho 574, 576–77 n. 1, 733 P.2d 795, 797–98 n. 1 (Ct.App.1987); *see Marks v. Vehlow,* 105

---

**1.** Nab also contends that Graham should be estopped because she herself had violated the decree by denying him visitation. However, a mere allegation that a party is in contempt cannot be substituted for the procedural requisites of the contempt statute, I.C. § 7–604. *Em-*

*bree v. Embree,* 85 Idaho 443, 380 P.2d 216 (1963). Equitable estoppel is a discretionary sanction to be used by the trial court. No error is presented by the record with respect to the refusal of the magistrate to invoke an estoppel.

Idaho 560, 671 P.2d 473 (1983); *see, e.g., Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir.1983); *see also Hicks v. Feiock*, ── U.S. ──, 108 S.Ct. 1423, 99 L.Ed.2d 721, 42 Cr.L.R. 3005 (1988). Here, the court explained to Nab that he must purge himself of the contempt before his motion to modify would be considered. Apparently, in the magistrate's opinion, refusal to consider modifying the support requirement was a civil contempt sanction intended to coerce compliance with the prior child support order.

▮ To justify a coercive sanction, a person held in civil contempt must be able to comply with the court order in question. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *In Re Marc Rich & Co., A.G.*, 736 F.2d 864 (2d Cir.1984); *Flagstaff Brewing Corp. v. Miller Brewing Co., supra.* If the affidavit is sufficient, to avoid punishment for contempt the party cited for contempt has the burden to show his inability to pay. *Lusty v. Lusty*, 70 Idaho 382, 219 P.2d 280 (1950). Even if a defendant is unable to attack an enforcement order on the ground that he was unable to comply when the order was issued, he still may assert a present inability to comply as a defense to the contempt. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The burden of proving plainly and unmistakably that compliance is impossible rests with the contemnor. *In Re Marc Rich & Co., A.G., supra.*

Following the contempt hearing, the magistrate acknowledged that Nab was presently unable to purge himself of the contempt. The court explained:

> What I'm saying is that the court does find that during the time—during that period of time that you were not incarcerated and not making child support payments, the court finds that to be contemptuous of the divorce decree. Therefore, I don't believe you can seek a modification at this time because you are in contempt.

> Now, I don't know how you're going to resolve this difficulty. If I had some manner by which to do that and tell you, I would certainly be glad to tell you, but I don't know what it is. You're not entitled to modify as long as you're in contempt, and you were, in fact, in contempt then.

Earlier the court had characterized Nab's problem as a "deep well," continuing:

> If you find yourself incapable of purging yourself by paying the $7200 or whatever that you're delinquent now, and you can't get the order modified because you are in contempt, and it's just a downward spiral that I have found in other instances, perhaps this would be rather offensive, but I don't know what the cure for that would be, frankly.

Obviously, imposing this sanction upon Nab can no longer serve a coercive purpose where Nab is now without the means to purge himself of contempt by paying the arrearages. Ordinarily, such a sanction cannot be sustained as a coercive civil contempt order.

However, Graham calls to our attention a line of Idaho authority which might be construed to bar a modification of support whenever the movant is in contempt of court. *See Lusty v. Lusty*, 70 Idaho 382, 219 P.2d 280 (1950); *Hoagland v. Hoagland*, 67 Idaho 67, 170 P.2d 609 (1946); *Brown v. Brown*, 66 Idaho 625, 165 P.2d 886 (1946); *Sauvageau v. Sauvageau*, 59 Idaho 190, 81 P.2d 731 (1938); *Bedke v. Bedke*, 57 Idaho 443, 65 P.2d 1029 (1937); *Vollmer v. Vollmer*, 43 Idaho 395, 253 P. 622 (1927). For example, in *Hoagland*, the Supreme Court concluded "the trial court was without authority to proceed with the hearing or modify the decree until the applicant had purged himself of the contempt by payment of the delinquent amounts." *Id.* 67 Idaho at 70, 170 P.2d 609. Similarly, in *Lusty* the Court invoked that rule after concluding that the movant had failed to meet his burden of showing that he did not have the ability to pay the support ordered. Graham contends that these cases stand

for the proposition that *under no circumstances* may a contemnor who has failed to purge himself obtain a child support modification.

■ We do not read our Supreme Court's pronouncements so broadly. Our review of these cases reveals that the Court has not been confronted by a situation such as that presented by Nab, a contemnor with the uncontested inability to presently purge himself of his contempt status. In light of the modern approach to contempt status, we conclude that the correct rule is—a trial court is without authority to modify a child support order if the movant is in contempt, *unless* the movant shows that, for reasons beyond his control, purging himself of the contempt is impossible.[2] We are not persuaded that this exception to the rule is contrary to the purposes of the rule propounded by our Supreme Court in *Lusty* and its progenitors.

■ However, Graham contends Nab's incarceration is not an involuntary change in circumstances, but one Nab brought upon himself. "Where the alleged contemnor has voluntarily brought upon himself the inability to obey the court's order, he cannot avail himself of a plea of inability as a defense to the charge of contempt." *Buck v. Myers,* 514 P.2d 742, 746 (Ariz.Ct. App.1973). *See also Lusty v. Lusty, supra.* If a party in bad faith voluntarily worsens his financial position he cannot obtain a modification of a decree under which he is required to pay child support. *Nelson v. Nelson,* 357 P.2d 536 (Or.1960); *see also Waskin v. Waskin,* 484 So.2d 1277 (Fla.Dist.Ct.App.1986) (modification not warranted where reduced ability to pay support resulted from alleged attempt to "do away" with ex-wife) *rev. denied,* 494 So.2d 1153 (Fla.1986).

For example, in *Buck v. Myers, supra,* the contemnor, a school superintendent, allegedly was unable to obey an order to reinstate a teacher because the superin-

tendent sought to place the teacher in an alternative position for which the teacher was not qualified instead of his former position. The contempt citation in *Brown v. Brown,* 66 Idaho 625, 165 P.2d 886 (1946), resulted from the appellant surreptitiously sequestering his children and submitting to the court only under coercion. The Supreme Court concluded that Brown had offered no "valid excuse" for his acts. In *Hoagland v. Hoagland,* 67 Idaho 67, 170 P.2d 609 (1946), the moving party offered no excuse for his failure to pay child support as ordered. In *Selph v. Selph,* 27 Ariz. 176, 231 P. 921 (1925), cited with approval in *Lusty,* the contemnor purchased a new auto and, after being found in contempt, advised a creditor-friend to garnish his wages. In each instance, the appellate court characterized the contemnor's act as being in bad faith or voluntary.

We now examine the cause of Nab's present inability to purge himself of contempt. Nab asserts that incarceration is an involuntary condition. Graham characterizes it as a status resulting from wrongful conduct and the voluntary acts of the prisoner, which should not be considered in determining his present ability to purge the contempt. However, sanctioning Nab for contempt by refusing to consider his motion when he is unable to purge himself of that contempt runs contrary to the very purpose of civil contempt. Homer Clark, Jr., summarizes the rule in this area of the law as:

> The guiding principle here, disregarding the overly broad language found in many opinions and looking only at the results of the cases, seems to be that noncompliance with the decree will prevent a hearing of the petition to modify if, but only if, that course provides fair and effective sanction for the enforcement of the husband's obligation.

H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED

---

**2.** *See* Annotation, *Husband's default, contempt or other misconduct as affecting modification of*  *decree for alimony, separate maintenance or support,* 6 A.L.R.2d 835, § 6 (1949 & Supp.1985).

STATES 464 (1968). *See also In re Thompson v. Thompson*, 25 Or.App. 421, 549 P.2d 683 (1976) (clean-hands doctrine should not bar modification motion of husband in arrears).

We acknowledge that some contrary authority exists. In *Ohler v. Ohler*, 369 N.W.2d 615 (Neb.1985), a majority of the Nebraska Supreme Court concluded that the clean-hands equity doctrine should bar a prisoner's motion for modification. However, we find the reasoning of the lone dissenter in *Ohler*, Chief Justice Krivosha, more persuasive. As Justice Krivosha recognized, barring an incarcerated and indigent parent from seeking a modification due to past contempt provides no present benefit to the child.

Here, Nab was imprisoned for an unrelated crime. He testified that he did not and would not seek incarceration to avoid his responsibility to his child. The civil sanction is effectively converted into a criminal penalty which denies Nab consideration of his motion when he might otherwise be able to establish grounds for an amendment of the decree.

█ A trial court has broad discretion when imposing its contempt power. *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980). But, under these circumstances, we believe the refusal to consider the motion on its merits was inappropriate and constituted an abuse of the court's discretion. The incarceration of the contemnor is not a voluntary or bad faith change in circumstance in the sense that the contemnor's act is self-disabling. We hold that a change of economic circumstances due to incarceration may form a valid basis for inability to comply with a contempt order.

## II

█ Having concluded that the magistrate erred by not reaching the merits of Nab's motion, we turn to the substance of that motion. Again, Graham argues that the consequences of Nab's illegal act should not excuse Nab from his continuing duty to support his child. This issue has been confronted in other states. In *Edmonds v. Edmonds*, 53 Or.App. 539, 633 P.2d 4 (1981), the Oregon Court of Appeals considered the two diverging lines of thought on the subject and held:

> Where a noncustodial parent is imprisoned for a crime other than nonsupport (or for civil contempt for failure to pay the same) we believe that the better rule should be that the parent is not liable for such payments while incarcerated *unless* it is affirmatively shown that he or she has income or assets to make such payments.

*Id.* 633 P.2d at 5 (emphasis added). Other courts have followed Oregon's lead. *See Clemans v. Collins*, 679 P.2d 1041 (Alaska 1984); *Foster v. Foster*, 99 A.D.2d 284, 471 N.Y.S.2d 867 (N.Y.1984). *Compare Ohler v. Ohler, supra.* We agree. Imposing upon the incarcerated parent a continuing support obligation, beyond his ability to pay, does not help the child. It simply adds to an accumulating burden which falls upon the parent at a time when he is least able to bear it—immediately upon release from prison.

Alternatively, Graham contends that, because the change in Nab's circumstances due to incarceration is not permanent, it fails as a matter of law to provide a proper foundation for a modification of the decree. She directs our attention to the rule stated in *Fuller v. Fuller*, 101 Idaho 40, 43, 607 P.2d 1314, 1317 (1980), that "[A] modification of child support payments can be made only where there is shown to be a material, *permanent,* and substantial change in conditions and circumstances." (Emphasis added.) The burden of showing such changed circumstances is upon the party seeking modification. *Simpson v. Simpson*, 51 Idaho 995, 4 P.2d 345 (1931).

The Court's oft-repeated "material, permanent and substantial" standard can be traced to *Simpson v. Simpson*, 51 Idaho at 102, 4 P.2d at 346 (1931). The *Simpson* Court cited five authorities for this proposition, *Humbird v. Humbird*, 42 Idaho 29,

243 P. 827 (1926); *Chaffee v. Chaffee*, 63 Utah 261, 225 P. 76 (1924); 2 J. Schouler on Divorce § 1831 (6th ed. 1921); 19 C.J. *Divorce* 273 (1920); and 1 R.C.L. *Alimony* 948 (1914). However, none of these sources mention permanence as a requirement for modification. Nor has our research revealed any Idaho authority elaborating upon this standard. In 1980, our legislature enacted I.C. § 32–709, a statute addressing the modification of support provisions in divorce decrees. The statute provides:

> The provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial and material change of circumstances.

Former statutes provided only a standardless power to modify a decree. It appears that the import of the legislature's failure to include the term "permanent" in I.C. § 32–709 has not yet been addressed by the appellate courts in Idaho.[3]

■ Upholding modification of a decree on grounds which are not permanent in the sense that they are irreversible is not unknown in Idaho. *See, e.g., Biggers v. Biggers*, 103 Idaho 550, 650 P.2d 692 (1982) (relocation to New Jersey of custodial parent sufficient grounds to modify visitation rights); *Dykstra v. Dykstra*, 94 Idaho 797, 799, 498 P.2d 1270 (1972) (reduced income of custodial parent due to overwork); *Embree v. Embree, supra* (lengthy period of physical incapacity properly considered in granting reduced child support); *Richardson v. Richardson*, 72 Idaho 19, 236 P.2d 718 (1951) (military enlistment of custodial parent and remarriage of noncustodial parent held sufficient grounds for custody transfer); *Ashton v. Ashton*, 59 Idaho 408,

83 P.2d 991 (1938) (continuing increase in income of custodial parent sufficient to reduce support from noncustodial parent); *see also Humbird v. Humbird, supra* (substantial increase in income of payor justifies support increase). Although we are not inclined to construe I.C. § 32–709 as nullifying the rule that a change in circumstances must be "permanent" to justify a modification, neither are we prepared to hold that incarceration and the associated possibility of reduction in income for an extended, but nonetheless limited, period is insufficient in permanence for a court to modify the amount of support required. Instead, we believe the period for which a change in circumstances is anticipated to exist, and its permanence, should be two of the factors to be considered by the trial court in determining whether a change in circumstances is "substantial." *See McRoberts v. McRoberts*, 80 Idaho 511, 335 P.2d 342 (1959).

■ Nab was sentenced to an indeterminate term of eight years in prison. At the time his motion to modify the decree in this case was filed, he still had more than six years to serve. Of course, as the magistrate recognized, Nab may be paroled earlier. However, although the magistrate apparently proceeded under the assumption Nab would be paroled in 90 to 120 days, the period which Nab would serve remained indefinite at the time of the hearing. We conclude that Nab's motion should not be denied merely because Nab probably will not be incarcerated for the remainder of his life. Resolution of Nab's motion to modify turns upon questions of fact not heretofore reached by the trial court. Therefore, we find it necessary to remand the case for further consideration by the magistrate.

■ As the magistrate correctly noted, Idaho law prohibits modification of support

---

3. Subsequent to the enactment of I.C. § 32–709, our Supreme Court has referred to the "material, permanent, and substantial" standard without taking note of the discrepancy between that standard and the statute. *See, e.g., Biggers v. Biggers,* 103 Idaho 550, 650 P.2d 692 (1982); *Chislett v. Cox,* 102 Idaho 295, 629 P.2d 691 (1981). *See also Overman v. Overman,* 102 Ida-

ho 235, 629 P.2d 127 (1980); *Brazier v. Brazier,* 111 Idaho 692, 726 P.2d 1143 (Ct.App.1986). *Compare Yost v. Yost,* 112 Idaho 677, 735 P.2d 988 (1987) (quoting "substantial and material change" standard of I.C. § 32–709). Apparently none of these cases raised an issue with respect to the "permanence" of the alleged change in circumstances.

accruing prior to the date of the motion. I.C. § 32–709; *see Simpson v. Simpson, supra; Cormana v. Naron,* 37 Idaho 482, 217 P. 597 (1923). Nab must bear the burden of that result from his own delay in presenting his motion. *See Lusty v. Lusty, supra.* Therefore, we affirm the court's refusal to retroactively release Nab from support accruing before the date of his modification motion.

The district court is directed to remand the case to the magistrate's division. On remand, the trial court should decide Nab's motion to modify on its merits. Unlike the court in *Edmonds v. Edmonds,* 53 Or.App. 539, 633 P.2d 4 (1981), we do not believe that being incarcerated should shift the burden of proof from the movant. Nab still bears the burden of showing that a substantial change has occurred in his ability to provide child support. Accordingly, following such proceedings as the magistrate deems necessary and appropriate, the court should determine what assets and income were available to Nab after the date of his motion, what assets and income are presently available, and, if warranted, to modify the decree appropriately.[4] *See, e.g., In re Marriage of Vetternack,* 334 N.W.2d 761 (Iowa 1983). In all other respects, the district court's decision is affirmed.

The order of the district court upholding the magistrate's determination is affirmed in part and vacated in part. Case remanded to district court with order to remand to magistrate division for further proceedings consistent herewith. No costs or fees allowed.

BURNETT and SWANSTROM, JJ., concur.

---

**4.** We note that, should the magistrate reduce Nab's burden during incarceration, he may consider an automatic reinstatement of the former support requirement following Nab's release.

*See Brazier v. Brazier,* 111 Idaho 692, 726 P.2d 1143 (Ct.App.1986); 24 AM.JUR.2d *Divorce and Separation* § 712 (1983).