William D. HUBER, Plaintiff–Appellant,

v.

MARINE MIDLAND BANK, Utica Mutual Insurance Company, Maghran, McCarthy & Flynn, Linda A. Hottum, George L. Cownie, and Irving C. Maghran, Jr., Defendants–Appellees.

Nos. 1876, 1942, 1943 and 1944, Docket 94–7201(L), 94–7203(L), 94–7205(L) and 94–7211(L).

United States Court of Appeals, Second Circuit.

Submitted Nov. 30, 1994.

Decided March 15, 1995.

6

Joseph B. Mistrett, Asst. Federal Public Defender, W.D.N.Y., Buffalo, NY, for plaintiff-appellant.

Wm. Dennis Huber, Lancaster, NY, pro se.

Before: FEINBERG, OAKES, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff William D. Huber, an attorney who prosecuted a number of actions *pro se* in the district court, appeals from an order of the United States District Court for the Western District of New York, Richard J. Arcara, *Judge,* entered on February 8, 1994 ("February 1994 Order"), as supplemented by an August 22, 1994 Decision and Order ("August 1994 Order") entered on remand from this Court, holding Huber in civil contempt for failure to comply with the district court's orders entered in September 1992, February 1993, and September 1993, requiring him to pay $1,500 in sanctions to the court (the "fines") and ordering him to be imprisoned until such time as he pays the fines. On appeal, through appointed counsel, Huber argues principally that the court's finding that he had the ability to pay the fines was not supported by clear and convincing evidence. We conclude that Huber's principal argument misallocates the burden of proof and that none of his arguments has merit.

## I. BACKGROUND

In 1990–1992, Huber, an attorney admitted to practice in the State of New York, though not in the United States District Court for the Western District of New York, commenced four actions *pro se* in the Western District in an effort to avoid repaying student loans. In all four actions, summary judgment was granted against him. In the four cases, the court imposed sanctions against Huber totaling $1,500, finding that he had pursued his litigation in a bad-faith and vexatious attempt to harass defendant Marine Midland Bank ("Marine"), which had made the loans, into abandoning its quest for repayments. The court found that Huber had made misstatements of fact and had acted in bad faith, vexatiously, wantonly and for oppressive reasons throughout this litigation. In order to avoid paying his student loans, Huber has implemented a scheme to harass Marine by running up the cost of litigation to the point where Marine will no longer find it profitable to pursue Huber for repayment of his loans.

Decision and Order dated September 4, 1992, at 9 (footnote omitted). The district court noted that Huber (a) had threatened Marine that "if you don't correct the information [in a certain credit report], I'm going to sue you every month until you correct [it]," *id.* at 10 (internal quotes omitted); (b) had asserted outrageous claims, including a claim for $56 million for "embarrassment" because Marine included copies of his student loan applications, which contained income tax information, in its papers on a summary judgment motion; and (c) had filed lawsuits and grievance actions against Marine's attorneys and employees in their personal capacities, with the "inten[t] to intimidate [them] into not representing Marine's interests," *id.* at 13.

In one of Huber's actions, the sanction imposed on him was a fine of $500. Huber appealed, and this Court affirmed both the granting of summary judgment and the imposition of sanctions. In his other three actions, the district court imposed sanctions totaling $1,000, and Huber did not appeal. On September 28, 1993, the court ordered that all of the fines be paid by November 1, 1993.

Huber did not comply with that order, and on November 17, 1993, the district court entered an order to show cause why he should not be held in contempt and imprisoned until he paid the fines. Noting that Huber might not realize the seriousness of his situation, and recognizing the poor quality of Huber's courtroom performance over the years, the court appointed an Assistant Federal Public Defender to assist him.

An evidentiary hearing was held on January 14, 1994. Huber testified that he had no assets. He testified that he had filed for bankruptcy in September 1993 and that he had no income, although his income had been approximately $20,000 in 1989, $35,000 in

1990, $44,000 in 1991, $44,000 in 1992, and $21,000 in 1993. He testified that he lived with his mother, was fed by his friends, and incurred no bills. Huber presented no financial documentation and testified that even if he were able to pay the fines, he would refuse to do so as "a matter of principle." (Hearing Transcript, January 14, 1994, at 29, 63–64.)

Following the hearing, the court entered its February 1994 Order holding Huber in contempt. The court noted that

> [a]t the January 14, 1994 hearing, Mr. Huber testified that, "as a matter of principle," he will not pay the Court-imposed fines. He maintained that he has not acted with intent to defraud the Court nor abused the judicial process. Further, Mr. Huber claimed that paying the fine would give the appearance that he agreed with the Court's findings. Finally, he testified that he has no income, that he lives with his mother, his friends provide him with meals, and that he filed bankruptcy on September 17, 1993.
>
> The Court notes that although Mr. Huber referred to the bankruptcy proceedings in his testimony, he has not provided the Court any documentation regarding this action. Nor has Mr. Huber filed any evidence regarding his inability to pay the fines or concerning his finances. Moreover, in the Court's Orders of September 4, 1992 and February 24, 1993, Mr. Huber was given the opportunity to present any objections and to state any reasons why his financial circumstances were such that the sanctions would be unduly burdensome. To date, the Court has not received any such information from Mr. Huber, despite his being given at least three opportunities to do so.

February 1994 Order at 5–6. The court concluded (a) that the September 28, 1993 order requiring Huber to pay the fines by November 1, 1993, or be imprisoned if he did not comply, was clear and unambiguous; (b) that "Huber's failure to pay the fine[s] is clear," id. at 7; and (c) that "Huber's lack of diligence in his effort to comply with the Court's order is clearly apparent from the record in this case. Mr. Huber has stated under oath that he disagrees with the Court's finding of fraud and abuse of the judicial process. He has also stated that he refuses to pay the fine as a matter of principle," id. at 7–8. As to Huber's testimony that he had no income and no assets, the court stated that, "[b]ased on the Court's three-year history with Mr. Huber, in which he has repeatedly misled the Court as to material facts and misrepresented his status, the Court gives little, if any, credence to this testimony." Id. at 10.

The February 1994 Order gave Huber until 4:30 p.m. on April 1, 1994, to pay the fines and stated that if he failed to comply by that time, he would be imprisoned until he paid. Huber appealed, and this Court, in an order dated April 5, 1994, stayed the February 1994 Order pending disposition of the appeal.

## A. The Initial Appeal from the Contempt Order

On appeal, Huber challenged the contempt order and sought to reargue the merits of the underlying imposition of sanctions. We rejected the attempted reargument because "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." United States v. Rylander, 460 U.S. 752, 756, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (internal quotes omitted).

As to the propriety of the contempt citation itself, we focused principally on the district court's statement that Huber had not provided any documentation for his testimony that he had filed for bankruptcy and on the court's emphasis on Huber's statement that he would refuse to pay the fines as a matter of principle, and we concluded that the court had not made a sufficiently clear finding as to Huber's ability to pay. Although the district court had stated that "Huber has it within his *power* to terminate the civil contempt by prompt payment of the $1,500 fine," February 1994 Order at 8 (emphasis added), that statement had been made in the course of the court's discussion of the doctrinal distinction between civil and criminal contempt, and we did not view this as a finding on the factual question of Huber's

ability to pay. The court had not conclusively rejected his claim of inability, stating instead that the court gave it "little, if any" credence. We concluded that before a party may be imprisoned as a sanction for civil contempt for failure to pay fines, a more explicit finding should be made as to his ability to pay all or some part of the fines.

Accordingly, in an order entered on June 8, 1994, we continued our April 5, 1994 order staying execution of the district court's February 1994 Order, and we remanded to the district court for further findings. Noting that the district court's initial factfinding effort had been hampered by the lack of any effort by Huber to provide documentation of his alleged financial condition, we instructed the court to take judicial notice of the records in Huber's bankruptcy case and suggested that it might seek additional information as to Huber's financial condition from Marine or from other parties before the court who participated in the bankruptcy proceedings as Huber's creditors. In remanding to require the court "to make an express finding as to Huber's ability to pay the fines imposed," we stated that "[n]othing in the foregoing is intended either (a) to alter the principle that Huber had the burden of establishing his defense of inability to pay, or (b) to require the district court to believe his testimony."

### B. *The Proceedings on Remand and the August 1994 Order*

On remand, the district court took judicial notice of Huber's bankruptcy proceedings, which had been resolved in December 1993 (but which had not relieved Huber of the obligation to pay the court-imposed fines), and asked the parties to provide additional information. The court requested that Marine provide whatever information it could as to Huber's financial condition. In addition, emphasizing that, as stated in this Court's June 8 order, Huber bore the burden of proving his inability to pay, the district court asked Huber to provide documentation such as copies of his tax returns and professional financial statements. After making clear that these requests were merely precatory (Hearing Transcript, June 22, 1994, at 9

("[i]t's not an order of this Court")), the court reiterated that "Mr. Huber has the burden of establishing financial inability to pay the $1,500 fine" (*id.*).

In response to the court's requests, Huber submitted no documents. Rather, he submitted an affidavit in which, citing his bankruptcy and his January 14, 1994 testimony, he took the position that "no other evidence is necessary from me" (Huber Affidavit dated July 22, 1994, ¶ 6). At the subsequent hearing, his attorney stated that Huber had chosen not to produce any documentation because, *inter alia*, the court's requests were merely requests, not orders. Further, apparently adopting the remarkable view that it was the court's burden to establish Huber's ability to pay the fines, his attorney sought to interrogate the court as to its efforts to obtain information.

In its August 1994 Order, the district court adhered to its original ruling that Huber's failure to pay constituted contempt. It noted that it had already found Huber's earlier testimony claiming inability to pay not credible, and it found Huber's July 22, 1994 affidavit, reaffirming that testimony, incredible in context. The court found, for example, that Huber had taken various administrative and judicial steps between April 1994 and August 1994, including filing new lawsuits and incurring witness fees, for which he had expended hundreds of dollars. It found that Huber had incurred travel expenses to pursue some of that new litigation in the Northern District of New York. It found that Huber had also pursued a series of potentially expensive freedom-of-information requests.

Finding that "[c]learly, Mr. Huber has a source or sources of funds that are available when needed to pursue vexatious and harassing litigation in his quest to avoid paying his outstanding student loans," the court found that Huber had not carried his burden of proving his inability to pay. August 1994 Order at 9; *id.* at 10 ("the Court finds, as a matter of fact, that Mr. Huber has the ability to pay the fines . . . .").

Following the district court's adherence to its February 1994 Order on the basis of its new findings, this appeal was reinstated.

## II. DISCUSSION

Huber contends principally (1) that the district court's finding that he had the ability to pay the fines was not supported by clear and convincing evidence, and (2) that he carried his burden of showing his inability to pay. The first argument misallocates the burden of proof; the second is meritless.

■ A civil contempt order is designed to be coercive rather than punitive. *See, e.g., Shillitani v. United States,* 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1986) (civil contemnors are imprisoned only until they comply with the orders of the court and "carry 'the keys of their prison in their own pockets' ") (quoting *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902)). Accordingly, a party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt. *See generally Hicks v. Feiock,* 485 U.S. 624, 638 n. 9, 108 S.Ct. 1423, 1433 n. 9, 99 L.Ed.2d 721 (1988); *United States v. Rylander,* 460 U.S. at 757, 103 S.Ct. at 1552; *Badgley v. Santacroce,* 800 F.2d 33, 36 (2d Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

■ The alleged contemnor bears the burden of producing evidence of his inability to comply. *See, e.g., United States v. Rylander,* 460 U.S. at 757, 103 S.Ct. at 1552; *McPhaul v. United States,* 364 U.S. 372, 379, 81 S.Ct. 138, 142–143, 5 L.Ed.2d 136 (1960); *Maggio v. Zeitz,* 333 U.S. 56, 75–76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948). If he "offers no evidence as to his inability to comply ... or stands mute," he has not met his burden. *Id.* at 75, 68 S.Ct. at 411. The court is not required to credit the alleged contemnor's denials if it finds them to be "incredible in context," *id.* at 76, 68 S.Ct. at 411, although the denials may be "given credit after demonstration that a period in prison does not produce the goods," *id.* In any event, "[t]he credibility of his denial is to be weighed in the light of his present circumstances." *Id.* Conclusory statements are inadequate to carry this burden. *See, e.g., Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 59 (2d Cir. 1984).

■ Further, the alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably. Thus, the Supreme Court has stated, "[o]ur precedents are clear ... that punishment may not be imposed in a civil contempt proceeding when it is *clearly established* that the alleged contemnor is *unable* to comply with the terms of the order," *Hicks v. Feiock,* 485 U.S. at 638 n. 9, 108 S.Ct. at 1433 n. 9 (emphasis added); *see, e.g., United States v. Rylander,* 460 U.S. at 757, 103 S.Ct. at 1552. This Court similarly has stated that "[t]he burden of proving *plainly and unmistakably* that compliance is *impossible* rests with the contemnor." *In re Marc Rich & Co.,* 736 F.2d 864, 866 (2d Cir.1984) (emphasis added, internal quotes omitted); *see Donovan v. Sovereign Security, Ltd.,* 726 F.2d at 59.

■ Thus, in order to hold the alleged contemnor in contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order. The court's findings of fact are not to be disturbed unless they are clearly erroneous. *See id.* Its decision to impose sanctions in light of properly found facts may not be overturned except for abuse of discretion. *See, e.g., N.A. Sales Co. v. Chapman Industries Corp.,* 736 F.2d 854, 857 (2d Cir.1984).

■ Although Huber pays lip service to the principle that he had the burden of proving his inability to pay the fines, the thrust of his argument, *i.e.,* that the district court *"must find* by clear and convincing evidence that the alleged contemnor *had the ability* to comply with its order" (Huber's attorney's supplemental brief on appeal at 11 (emphasis added)), seeks to shift that burden. As the above authorities establish, there is no requirement that the ability to pay be clearly established; what is required is that the *inability* to pay be clearly established by the alleged contemnor.

■ Nor are we persuaded by Huber's argument that he carried his burden. Accusing the district court of having an "ob-

session with documentation" (*id.* at 14), he argues that it is difficult to prove a negative by documentation. That is generally true. But we deal not with a situation in which Huber presented favorable documents that the court refused to credit, but rather with his refusal to present any documents. Irrespective of how the court might have regarded documents that indicated that he had no assets or income, the fact is that since Huber refused to produce his documents, it remains possible that the documents would show that he did indeed have assets and income. The court was entitled to consider Huber's refusal to produce documents in assessing the credibility of his oral representations.

In sum, the district court on remand found that Huber's assertions that he was unable to pay were incredible and that, in light of his demonstrated ability to, *inter alia,* finance his post-February 1994 litigation, Huber had the ability to pay the fines and had not carried his burden of proving his inability to pay. The court's findings are sufficiently clear, are adequately supported by the evidence, and are not clearly erroneous. In light of the facts found by the district court, we conclude that its decision to impose sanctions was not an abuse of discretion.

## CONCLUSION

We have considered all of Huber's arguments on this appeal, including his contention that the court's appointment of counsel to assist him required the court to find that Huber was unable to pay the fines, and the contention that the court should not have initiated the civil contempt proceeding but should instead have referred the matter to the United States Attorney for a criminal contempt prosecution. All of Huber's arguments are without merit. The order of the district court is affirmed.

The stay granted by this Court's April 5, 1994 order is hereby dissolved. The mandate shall issue forthwith.