A.V. BY VERSACE, INC., Plaintiff,

v.

GIANNI VERSACE, S.P.A. and Alfredo
Versace, Defendants.

Gianni Versace, S.P.A., Plaintiff,

v.

Alfredo Versace and Foldom
International (U.S.A.),
Inc., Defendants.

Nos. 96 CIV. 9721(PKL) (TH),
98 CIV. 0123(PKL) (TH).

United States District Court,
S.D. New York.

Aug. 28, 2003.

342

David E. Jacoby, Esq., Phillips, Nizer, Benjamin, Krim & Ballon LLP, New York, for Plaintiff Gianni Versace, S.p.A.

Bryan J. Holzberg, Esq., Melville, Joseph A. Carmen, Esq., Haddonfield, NJ, for Defendant Alfredo Versace.

## *OPINION AND ORDER*

LEISURE, District Judge.

On September 3, 2002, the Court found defendant Alfredo Versace ("Alfredo") in contempt of Court because of numerous violations of a preliminary injunction that has been in effect since February 1998. *See*

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* No. 96 Civ. 9721, 2002 WL 2012618 (S.D.N.Y. Sept.3, 2002). On June 30, 2003, the Court held a hearing in order to determine whether Alfredo has purged himself of that contempt. The Court now finds that Alfredo remains in contempt of Court, that there are new bases for a contempt finding,[1] and that further coercive sanctions are necessary.

## BACKGROUND

### I. Factual Background

The facts of this and related cases have been set forth in a series of decisions, familiarity with which is assumed. *See Gianni Versace, S.p.A. v. Versace,* No. 01 Civ. 9645, Summary Judgment Opinion & Order, (S.D.N.Y. Aug. 27, 2003); *A.V. by Versace,* 2002 WL 2012618; *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 191 F.Supp.2d 404 (S.D.N.Y.2002); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 126 F.Supp.2d 328 (S.D.N.Y.2001); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* No. 96 Civ. 9721, 1998 WL 832692 (S.D.N.Y. Dec.1, 1998). Specific facts pertinent to this decision are recounted in the discussion as necessary.

### I. Procedural Background

The parties filed separate lawsuits in December 1996 and January 1998. In 2001, another lawsuit was filed. The first two have been consolidated into one action and the third is related to the first two. All of the actions are before this Court, and all contain allegations of trademark infringement as the main thrust of the complaint.

On February 4, 1998, plaintiff Gianni Versace, S.p.A.'s ("Gianni") request for a preliminary injunction against Alfredo was granted from the bench.[2] The preliminary injunction, as originally entered, contained the following relevant provisions. It enjoins Alfredo from using or licensing the use of "Alfredo Versace" as well as a list of other specifically enumerated "Infringing Marks"[3] previously used by Alfredo Versace, and enjoins the use any other trademarks confusingly similar to those of Gianni Versace.[4] Although the injunction bars Alfredo from using his name as a trademark, the preliminary injunction allows Alfredo to use his name to identify goods that he has designed by use of the phrase "Designed by Alfredo Versace," as long as the goods so identified prominently display the disclaimer: "not affiliated with or authorized by Gianni Versace S.p.A." The disclaimer must be printed in the same size as the words "Designed by Alfredo Versace." The preliminary injunction also prohibits Alfredo from delegating or licensing his rights to a middleman. However, manufacturers and distributors may use the name "Alfredo Versace" in accor-

---

1. While plaintiff has not formally moved to hold defendant in contempt for the new contemptuous conduct, it is clear from its submissions that is the desired result. It is equally clear that Alfredo understands what plaintiff seeks and that he had ample opportunity to defend against the allegations. Therefore the Court will not require the formality of a notice of motion to hold Alfredo in further contempt but will treat plaintiff's post-hearing submissions as such a motion.

2. The preliminary injunction was put in written form on February 10, 1998.

3. The Infringing Marks are defined as "Alfredo Versace," "A.V. by Versace," "AV by Versace," "AV by A. Versace," "AV Versace," "Versace by A.V.," "AV Alfredo Versace," "A.V. Alfredo Versace," "A. Versace," "A.V. Versace," "Versace," and "A. Versace Jeans."

4. Gianni Versace's trademarks include "Gianni Versace," "Versace," "V2 by Versace," "Versus Gianni Versace," "Versace Red Jeans," and "Versace Blue Jeans."

dance with the preliminary injunction, provided that those manufacturers and distributors first agree in writing to be bound by the preliminary injunction. Alfredo was required to withdraw any pending trademark registrations consisting of, in part or in whole, any of the Infringing Marks. In addition, the preliminary injunction required Alfredo to provide a copy of the preliminary injunction to all past and present licensees and distributors. On January 4, 2001, this Court clarified that the preliminary injunction applies extraterritorially.

As part of the September 3 decision, the Court ruled that it would modify the preliminary injunction to bar Alfredo from using the surname "Versace" in any commercial context. The modified injunction was signed on January 27, 2003.

On March 6, 2000, the Court found Alfredo in civil contempt for violating the preliminary injunction. *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F.Supp.2d 281, 294–95 (S.D.N.Y.2000). Specifically, the Court held that Alfredo violated the preliminary injunction by using offshore Internet sites to advertise and distribute his products in the United States. *See id.* at 295. As a result of this violation, the Court ordered Alfredo to pay Gianni the sum of one-third of its costs and attorneys' fees incurred in making the contempt motion.[5] *See id.* at 296. Alfredo was also ordered to take all reasonable steps to remove all Infringing Marks from the Internet and file an affidavit of his attempts in this regard within thirty days of the decision. *Id.*

In an Opinion and Order and Report and Recommendation dated January 9, 2002, United States Magistrate Judge Theodore H. Katz granted Gianni's motion for sanctions against defendant Alfredo for his long-term refusal to obey three discovery orders issued by the Court. As a sanction for his misconduct under Rule 37 of the Federal Rules of Civil Procedure, Magistrate Judge Katz ordered Alfredo to pay Gianni's costs and attorneys' fees incurred in attempting to secure compliance with the discovery orders, and recommended that both Alfredo's Answer in No. 98 Civ. 0123, and his Answer and cross-claim in the related action, No. 96 Civ. 9721, be stricken. On March 21, 2002, this Court adopted Judge Katz's Opinion and Order and Report and Recommendation in its entirety, essentially causing a default for Alfredo Versace in the instant consolidated action.[6] *See A.V.*, 191 F.Supp.2d at 404–05.

The September 3 decision was in response to a motion by Gianni to hold Alfredo in contempt. Gianni's motion was based on four general categories of alleged contemptuous activity: (1) that Alfredo was involved in the sale of watches, jeans and handbags that use "Alfredo Versace" in a manner other than to identify himself as the designer of products designed by him, and without the required disclaimer; (2) that Alfredo failed to take actions required by this Court in the March 6, 2000 Opinion and Order, and that as a result, several websites continued to display use of the "Alfredo Versace" trademark to sell goods; (3) that Alfredo started an enter-

---

**5.** After reviewing Gianni Versace's affidavits and time records for its motion, the Court ordered that Alfredo remit $31,031.39 to Gianni Versace as a result of his contemptuous conduct. *See Gianni Versace v. Alfredo Versace*, No. 96 Civ. 9721, 2000 WL 739569, at *3 (S.D.N.Y. June 8, 2000).

**6.** All other parties in the instant action had either entered default judgments or settled with Gianni Versace by the time this Court adopted Judge Katz's Opinion and Order and Report and Recommendation striking Alfredo Versace's two Answers in this consolidated action.

prise with L'Abbigliamento, Ltd. involving goods and advertisements employing the marks "Designed by Alfredo Versace" and "Alfredo Versace" that do not bear the required disclaimer;[7] and (4) that Alfredo has attempted to promote sales by claiming both that he is the late Gianni Versace's cousin and that he has litigated and won the right to use his name as a trademark.

With respect to the first category, the Court found that Alfredo had been involved in the sale of watches, jeans and handbags in a manner in which clearly violated the preliminary injunction. With respect to category two, the Court found that Alfredo failed to comply with the March 6, 2000 decision, and that there were still Infringing Marks on the Internet that Alfredo took no steps to disable. With respect to category three, the Court found that Alfredo was involved in a clothing venture with L'Abbigliamento that used Infringing Marks and failed to include the required disclaimer. Finally, with respect to category four, the Court found that there was insufficient evidence to hold Alfredo in contempt on this ground. Based on his activities in categories one, two and three, the Court again found Alfredo in contempt of Court.

The Court found that both compensatory damages and coercive monetary penalties were appropriate in light of Alfredo's contempt. Therefore, the Court again ordered Alfredo to take all reasonable steps to ensure that all references on the Internet to "Alfredo Versace" that do not comply with the preliminary injunction, and all references to the Infringing Marks, are removed. He was required to file an affidavit within thirty days of the Opinion and Order describing his efforts in this regard and noting any references he was unable to remove. The Court also awarded Gianni a compensatory fine equal to any profits made by Alfredo via activities in violation of the preliminary injunction. In order to facilitate this fine, Alfredo was ordered to produce within sixty days a detailed statement of all net profits derived by Alfredo from his infringing conduct throughout the world from February 4, 1998 until the date of the decision. The statement was to have been prepared by a certified public accountant. Finally, the Court also awarded Gianni all of its attorneys' fees and costs in connection with bringing the contempt motion.[8] To coerce compliance with these conditions, the Court stated that Alfredo shall pay a fine of $2,000 each day he is not in full compliance with the decision. On October 25, 2002, having received none of the required affidavits and reports from Alfredo in response to the September 3 decision, the Court imposed the $2,000 fine, running from each day after October 3, 2002.

## DISCUSSION

### I. Standard for Civil Contempt

■ As stated in the September 3 decision, a Court can impose contempt sanctions only if " 'the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.' " *See A.V. by Versace,* 2002 WL 2012618, at *6 (quoting *United States v. Local 1804-1, Int'l Longshoremen's Ass'n,* 44 F.3d 1091, 1096 (2d Cir.1995)) (internal quotations omitted).

---

7. Gianni has filed a separate lawsuit, No. 01 Civ. 9645, in relation to these allegations. In that action, Gianni sued Alfredo, L'Abbigliamento and Esrim de Sheva Corp.

8. The amount of those fees and costs was subsequently set at $131,546.75.

## II. Gianni's Current Allegations

Gianni now argues that Alfredo has not purged himself of the contempt. Specifically, he relies on five allegations: (1) Alfredo has failed to pay outstanding judgments and fines; (2) Alfredo has failed withdraw trademark applications and registrations; (3) Alfredo has failed to provide an adequate report by a certified public accountant as required by the September 3 decision; (4) Alfredo has failed to take all reasonable steps to remove infringing marks from the Internet; and (5) Alfredo continues to violate the preliminary injunction. These allegations will be addressed in turn.

## A. Outstanding Judgments and Fines

Gianni first argues that Alfredo has failed to pay any of the outstanding judgments or fines and this conduct is contemptuous. Alfredo does not deny that he has completely failed to pay any of the judgments of attorneys' fees[9] and it is further without question that he has not remitted to the Court the fine imposed on October 25, 2002. Certainly the judgments and fines are clear and unambiguous. Furthermore, since there is no dispute as to whether they have been paid, the proof of non-compliance is clear and convincing, and there is no evidence that Alfredo has made reasonably diligent efforts to comply.

◼ While Alfredo does not deny that he has not paid these judgments and fines, he argues that he simply cannot afford to do so. The power of the Court to impose a coercive civil contempt sanction is limited by a party's ability to comply with the

Court's order. *See Badgley v. Santacroce,* 800 F.2d 33, 36–37 (2d Cir.1986); *see also United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with [a] civil contempt action."). "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995) (Kearse, J.).

◼ The contemnor bears the burden of producing evidence of his inability to comply. *Id.* This burden, which is one of production, *see Rylander,* 460 U.S. at 757, 103 S.Ct. 1548, is not easily met, as an alleged contemnor must prove " 'plainly and unmistakably that compliance is impossible.' " *Huber,* 51 F.3d at 10 (quoting *In re Marc Rich & Co.,* 736 F.2d 864, 866 (2d Cir.1984)) (alteration in original); *see also Hicks v. Feiock,* 485 U.S. 624, 638 n. 9, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1987). If an alleged contemnor fails to offer evidence of his inability to comply with the order, he has not satisfied his burden. *See Huber,* 51 F.3d at 10 (because documents which alleged contemnor refused to produce might have shown that he did have assets and income, he failed to meet his burden of proving inability to pay); *Maggio v. Zeitz,* 333 U.S. 56, 75–76, 68 S.Ct. 401, 92 L.Ed. 476 (1948).

◼ Beyond his and his attorneys' conclusory allegations, Alfredo has produced the following evidence of inability to pay: (1) numerous tax returns;[10] (2) a balance

---

**9.** Judgments for attorneys' fees were entered in Gianni's favor on July 20, 2000 ($31,-031.39); July 22, 2002 ($31,741.05); and June 24, 2003 ($131,546.75). As such, by the Court's calculation, Alfredo owes Gianni $194,319.19.

**10.** These tax records include an unsigned and undated 2001 individual federal tax return for Alfredo and Frances Versace showing an adjusted gross income of $5,111, which includes a $5,500 profit made from a business entitled, according to the included Schedule C, "Alfre-

sheet for an entity purportedly titled "Versace Boutique, Ltd.," dated October 31, 2002, attached as an exhibit to Alfredo Versace's November 18, 2002 affidavit,[11] showing total assets of $20,447.42 and total liabilities of $22,546.96;[12] and (3) various bank records from several different banks, for different accounts, and maintained for several different entities.

With more effort on his part, Alfredo might be able to show his inability to pay the judgments and fines. Indeed, if defendant did not bear the burden of production, the Court would likely find that Alfredo was unable to comply. However, he does bear this burden and he has certainly not met it.

The Court, for obvious reasons, is unable to rely on unsigned tax returns without an explanation as to why signed copies are unavailable.[13] *Cf. S.E.C. v. Margolin*, No. 92 Civ. 6307, 1996 WL 447996, at *4 (S.D.N.Y. Aug.8, 1996) (Leisure, J.) (noting the insufficiency of unsigned tax returns in this context). Even if unsigned copies were sufficient, no tax records are provided for the year 2002, and scant information is provided regarding this year. Furthermore, the Court will not rely on bank records that it cannot decipher. The submitted records, like the tax returns listed

---

do Versace"; an unsigned and undated 2000 corporate federal tax return for "Versace Boutique Ltd.," claiming that the corporation lost over $300,000 in that year; an unsigned and undated 1997 individual federal tax return for Alfredo and Frances Versace showing an adjusted gross income of $26,858, which includes a $28,900 profit made from a business entitled, according to the included Schedule C–EZ, "Alfredo Versace"; an unsigned and undated 1998 individual federal tax return for Alfredo and Frances Versace showing an adjusted gross income of $25,559, which includes a $27,820 profit made from a business entitled, according to the included Schedule C, "Alfredo Versace"; an unsigned and undated 1999 individual federal tax return for Alfredo and Frances Versace showing an adjusted gross income of $28,642, which includes a $30,820 profit made from a business entitled, according to the included Schedule C, "Alfredo Versace"; Schedule C–EZ from a 2000 individual federal tax return showing that a business entitled "Alfredo Versace" had a profit of $18,000 (the remainder of this tax return was not included with defendant's submissions); an unsigned and undated 1999 corporate federal tax return for "Versace Boutique, Ltd.," claiming that the corporation lost over $300,000 in that year; an unsigned and undated 1998 corporate federal tax return for "Versace Boutique, Ltd.," claiming that the corporation lost over $300,000 in that year; an unsigned and undated 1997 corporate federal tax return for "Versace Boutique, Ltd.," claiming that the corporation lost almost $200,000 in that year; and an unsigned and undated 1996 corporate federal tax return for "Versace Boutique, Ltd.," claiming that the corporation lost over $60,000 in that year.

11. While this affidavit is dated November 18, 2002, it was not submitted to the Court until January 18, 2003. No suitable explanation for this delay has been given.

12. Interestingly, another balance sheet, also dated October 31, 2002, was also attached to the November 18, 2002 Alfredo affidavit, and it shows slightly different numbers for assets and liabilities because it omits some of the information included in the first balance sheet. No explanation for this discrepancy has been provided.

13. Even if Alfredo supplies an acceptable reason why signed copies are unavailable, the Court will not accept unsigned copies without an affidavit, sworn to under penalty of perjury, verifying that the unsigned copies are copies of the tax returns that were actually filed with the Internal Revenue Service.

Furthermore, the unsigned tax returns purportedly for Versace Boutique, Ltd., are particularly suspect given that that corporation was apparently dissolved by the state of New York on June 24, 1992. *See* Certification of the New York Secretary of State, June 20, 2003, attached as Ex. B to Affidavit of David Jacoby, Esq., sworn to on July 14, 2003. An explanation of this discrepancy would be appropriate.

in footnote 10, were not presented in any semblance of order and Alfredo and his attorneys apparently felt no need to explain anything about these records. Frankly, the Court can make neither hide nor hare of them. If Alfredo expects the Court to rely on bank records, he should submit them in an orderly fashion and with explanation. He needs to explain, with specificity, the beneficiary of the accounts,[14] the purpose of the accounts, and any other information that would assist the Court in making an informed decision about his ability to pay the judgments and fines. The Court cannot and will not perform the role of Alfredo's accountant.[15] Third, it is unclear whether full records have been provided for all of the entities that Alfredo has controlled. He testified that he set up entities in the Bahamas and in Canada. *See* June 30 Tr. at 49 & 59. The Court is unable to determine whether Alfredo has submitted full and complete records for all of his various entities.[16] This is something he must do.

For the Court to determine that Alfredo is unable to satisfy the judgments and fines, a full and complete picture of Alfredo's financial situation, including all entities that he previously or currently controls, from July 20, 2000, the date of the first judgment, to the present time must be submitted. It needs to be submitted in an orderly fashion with a reasonable explanation and arguments based thereon. Self-serving, conclusory statements with incomplete financial records do not show an inability to pay the outstanding balances. Therefore, until such time as Alfredo satisfies the judgments and fines or meets his burden of production, he remains in contempt of this Court.

## B. Trademark Applications and Registrations

■ Gianni next argues that Alfredo has failed to withdraw trademark applications and registrations throughout the world in violation of the preliminary injunction. The preliminary injunction bars Alfredo from registering or attempting to register any Infringing Marks. *See* Preliminary Injunction, 98 Civ. 0123, Jan. 7, 2003 ("PI"), ¶ 9.[17] The injunction also states:

> *Pendente lite,* defendants shall not use, register, license, franchise or otherwise obtain, or permit, attempt or cause to be used, registered, licensed, franchised or otherwise obtained, any trademark, trade name, service mark, corporate name, business name (including but not limited to "Alfredo Versace Boutique"), copyright, logo or other symbol or device consisting of, employing or incorporating as part thereof, any of the Infringing Marks, and they

---

**14.** Because it appears that he may control similar entities bearing the same name but incorporated in different countries, *see, e.g.,* Transcript of the June 30, 2003 Hearing ("June 30 Tr.") at 49, Alfredo needs to delineate exactly which entity controls each account.

**15.** It is worth noting, however, that at various times in the last couple of years some of these accounts have held sufficient sums of money since July 2000 when the first judgment was entered against defendant. For example, according to a statement dated November 30, 2000, a Bank of Montreal account maintained by Versace Boutique, Ltd., contained over

$50,000. If Alfredo had sufficient funds to satisfy the judgment but failed to do so, that is a relevant consideration for the Court and one that he certainly needs to explain.

**16.** Notably, he has not averred that he has done so.

**17.** This citation and the remaining ones in this section are to the modified preliminary injunction. The relevant substance of the cited paragraphs, however, does not vary from the injunction as originally issued on February 10, 1998.

shall immediately cause to be withdrawn or abandoned any and all applications for such registrations filed in either of their names, on behalf of either of them, or in the name or on the behalf of any company owned in whole or in part by or affiliated with either of them[.]

*Id.* ¶ 11. Gianni reads this paragraph as requiring Alfredo to withdraw not only applications for trademarks but also registrations that have been granted before the injunction was issued. This interpretation is incorrect.

As stated above, to hold a party in civil contempt there must be a finding that the violated order was clear and unambiguous. It is certainly not clear and unambiguous in the preliminary injunction that Alfredo must withdraw registrations granted before the original preliminary injunction was issued. In fact, the plain language of the preliminary injunction requires no such act. It simply requires Alfredo to withdraw applications for registrations not yet granted.[18] Nothing in the preliminary injunction allows for a contempt finding based solely on the fact that Alfredo has not withdrawn registrations for Infringing Marks granted before the issuance of the original injunction.[19]

Alfredo, however, also misinterprets the preliminary injunction. He is under the impression that he may retain registrations for Infringing Marks that were granted before January 4, 2001, the date on which the Court clarified that the preliminary injunction applied internationally. *See* Post–Hearing Reply Memorandum of Law of Alfredo Versace, undated ("Def.Reply"), at 2. However, the January 4, 2001 decision was only a clarification not a modification. In other words, the preliminary injunction applied internationally from the outset. Therefore, it is clear that any registration for an Infringing Mark anywhere in the world granted after February 4, 1998, must be withdrawn. Therefore, defendant must withdraw all applications for registrations of Infringing Marks [20] and all registrations granted for such marks after February 4, 1998.

There is certainly a substantial question as to whether Alfredo is in compliance with this part of the preliminary injunction. For example, Alfredo testified that he owns a registration in Japan that he is currently defending in litigation.[21] *See* June 30 Tr. at 30. If that mark was registered before February 4, 1998, nothing in the preliminary injunction bars Alfredo from defending that registration.[22]

18. Of course, under other parts of the preliminary injunction, Alfredo is unable to actually use Infringing Marks, even if they are registered. That does not mean, however, that he must withdraw the registration.

19. This is quite likely not an oversight but a conscious decision by the Hon. Sidney H. Stein, the judge who signed the original preliminary injunction. Indeed, it is a sensible result. A preliminary injunction should sweep only so far as necessary to protect the legitimate interests of the plaintiff. The injunction protected Gianni from Alfredo's use of Infringing Marks. Requiring Alfredo to withdraw registrations already granted would have imposed unnecessary and undue hardship on Alfredo, considering the fact that if he

were ultimately successful in defending the lawsuit, he would have to reapply for marks he once had registered.

20. In this regard, it is important to note that ceasing litigation is not the same as withdrawing an application for a registration. Alfredo appears to equate the two. *See* Def. Reply at 2. To comply with the injunction, he must actually withdraw registration applications not just stop defending them.

21. He also testified that the mark is "Alfredo Versace." That is, of course, an Infringing Mark.

22. Again, the preliminary injunction does bar him from using that mark.

However, if it was granted after that date, it must be withdrawn. To enable the Court to make an informed decision about Alfredo's compliance with the preliminary injunction, the Court now orders Alfredo to submit a detailed report regarding all of his mark registration activities around the world since February 4, 1998. Specifically, the report, sworn to under penalty of perjury, must list all of the registrations and applications for registrations with which Alfredo has been associated, regardless of their current status, for any mark that in anyway incorporates the word "Versace." The report must include the date the application was filed, the current status of the application, and, if the application was granted, the date on which the mark was registered. Any applications that are pending and any registrations that were granted after February 4, 1998, must be withdrawn *immediately*. The Court will not tolerate delay in this regard.

## C. Accountant Report

■ In order to determine the appropriate amount of the compensatory fine, the September 3 decision required Alfredo to produce within sixty days "a detailed statement of all net profits" derived by Alfredo from the licensing and sales that violated the preliminary injunction throughout the world from February 4, 1998 until the date of that decision. *A.V. by Versace,* 2002 WL 2012618, at *11. The Court expressly required that the report be prepared by a certified public accountant. *Id.* While he has made two attempts to fulfill this requirement, Alfredo's efforts in this regard are woefully inadequate.

Alfredo first submitted a reported prepared by Romanos H. Chidraoui of Taxes Computerized Associates in Brooklyn, New York. While the report is dated No-

vember 16, 2002, the Court did not receive it until January 28, 2003. This report did not meet the requirements of the September 3 decision because Mr. Chidraoui is not a certified accountant.

Alfredo again attempted to comply with the September 3 decision with two reports, both dated June 13, 2003, prepared by Maria Estela Lorenzo, a certified public accountant located in Bayside, New York. These reports are also wide of the mark. First, and most elementary, they were never filed with the Clerk of Court. Courtesy copies were delivered to Chambers, and Gianni's counsel has also received copies. However, the originals were not properly filed. The Court has continually reminded counsel for Alfredo that originals of all documents must be filed with the Clerk of Court.

Second, the reports are a compilation for Versace Boutique, Ltd., a corporation that no longer exists.[23] *See supra* n. 13. They make no mention of Alfredo's personal finances, *see* June 30 Tr. at 79, and do not cover other entities that apparently do exist, such as the Alfredo's entities in Canada and the Bahamas. *See id.* at 78, 80.

Third, the reports only discuss income and expenses for Versace Boutique, Ltd. They do not specify the source of the income. The September 3 decision required an accountant's report so that Gianni and the Court "may properly estimate the profits made by Alfredo Versace via activities in violation of the preliminary injunction." *A.V. by Versace,* 2002 WL 2012618, at *11. A report that is little more than a profit and loss statement does not enable anyone to make a determination of what profits were derived from enjoined conduct, unless of course Alfredo is indicating that all of his activities since 1998

---

**23.** The reports are addressed to "The Board of Directors of Versace Boutique, Ltd.," and they state that Versace Boutique, Ltd. is a C Corporation.

have been in violation of the preliminary injunction.

Finally, the reports do not include information for the full time period required.[24] Most significantly, they omit any information from March 1, 2001 through June 30, 2002.[25] Alfredo has made no attempt whatsoever to explain this glaring omission. He simply argues that he has made a good faith effort to comply with the Court's requirements. Defendant's argument might have some force if information was missing for only one or two months. However, when the reports do not cover an entire sixteen-month period, the Court can hardly find that Alfredo made a good faith effort to comply with the September 3 decision. To argue otherwise is simply absurd.

Gianni also takes issue with the fact that the reports are not audits or investigations but compilations.[26] The Court, however, is unconcerned about whether Alfredo submits a compilation or an audit. The problem is not the type of reports submitted; the problem is the reports' lack of both depth and breadth. A compilation that is comprehensive and detailed, that is prepared by a certified public accountant,[27] that includes complete information regarding Alfredo's personal finances and the finances of all of the entities he controls, that specifies the types of activities from which any profits were derived, and that covers the entire time period from February 4, 1998 until September 3, 2002 would meet the Court's requirements.[28] Until such a report is properly filed with the Clerk of Court, Alfredo will remain in contempt.

## D. References to Infringing Remarks on the Internet

■ The September 3 decision also required Alfredo to take all reasonable steps to ensure that all Infringing Marks are removed from the Internet. Gianni argues that Alfredo has not complied with this requirement.

It is important to note at the outset of this discussion that this is not a strict liability requirement. The Internet is vast and sometimes lawless frontier. It simply would be unfair to hold Alfredo in con-

24. Gianni asks the Court to expand the required time period to the months that have passed since the September 3 decision. There is no reason, however, to grant this request. The Court awarded a compensatory fine equal to Alfredo's profits from contemptuous conduct through the date of the decision. At no point has the Court awarded an additional compensatory fine equal to defendant's profits after September 3, 2002. Therefore, there is no reason for an accounting report to be prepared for the time period following the original decision.

25. The reports also exclude February 1998.

26. The reports state that a compilation is limited to presenting, in the form of a financial statement, financial information presented to the accountant by the company. In such a report, the accountant does "not express an opinion or any other form of assurance" that the report is accurate.

27. The accountant should be presented with a full and accurate picture of the status of all of the entities. In other words, a report that states that a dissolved corporation is a current corporation will not pass muster.

28. The Court recognizes that a determination of what conduct violates the injunction will likely be beyond the skill set of an accountant. In this regard, it would be helpful if Alfredo or his counsel submit an affidavit with the new report in which the affiant gives his opinion regarding which conduct violates the injunction and which conduct is legitimate. It is not unlikely that Gianni and Alfredo will disagree about which profits are legitimate and which profits should be part of compensatory fine. The Court is available to make that determination once Alfredo provides a full picture of his profits and the activities from which they were derived.

tempt for any reference to his name in connection with the sale of goods on the World Wide Web. What he is required to do is take *reasonable* steps to remove Infringing Marks. Such steps should include notifying the owners of websites that contain Infringing Marks that the use is unauthorized, in violation of a court order, and must be removed.

While it has taken far too long, Alfredo now appears to be making a good faith effort in this regard. He has directed his attorney, Joseph A. Carmen, Esq., to make periodic searches of the Internet for websites with Infringing Marks and to contact the owners of those websites with a letter that threatens litigation if the Infringing Marks are not removed. *See* Affidavit of Joseph A. Carmen, Esq., undated, ¶ 5–8 & Ex. I. This is a good, if tardy, beginning. So long as Mr. Carmen continues to scour the Internet for Infringing Marks and continues to send cease and desist letters when he finds such marks, the Court will be satisfied if a few additional steps are taken. Future cease and desist letters should reference the preliminary injunction. Gianni's attorneys should be copied on these cease and desist letters. At their discretion, Gianni's attorneys may notify Alfredo, through Mr. Carmen, of additional websites that contain Infringing Marks and Alfredo should cause cease and desist letters to be sent to the owners of those websites as well. Furthermore, Mr. Carmen and/or Alfredo should periodically report to both Gianni and the Court on their efforts. Specifically, they should note Infringing Marks that they are unsuccessful in removing.[29]

In any event, the Court finds that Alfredo has made a good faith effort to comply with the September 3 decision and therefore he has purged himself of any contempt associated with Infringing Marks on the Internet. Failure to comply strictly with the requirements set forth in the preceding paragraph, however, will quickly lead to another finding of contempt.

### E. New Violations of the Preliminary Injunction

Gianni also contends that there is now evidence of new violations of the preliminary injunction meriting a finding of contempt. The Court agrees in part and disagrees in part.

### 1. The Bottled Water

■ There is no dispute about the underlying facts of this clear violation of the modified injunction. Alfredo admits that he delivered bottled water to Charlie Brown's Steakhouse on April 4, 2003. *See* June 30 Tr. at 133–34; Plaintiff's Ex. 20, June 30, 2003 Hearing. That water's label included the word "Versace,"[30] *see* Plaintiff's Ex. 32, June 30, 2003 Hearing, which is expressly prohibited by the modified injunction.

Instead of disputing these facts, Alfredo claims that he was "under the misunderstanding that since the water had been ordered and paid [for] prior to the September 3, 2002 Order, he could still ship the balance of the order." Def. Reply at 5. This explanation is insufficient, especially since his attorneys indicated on February 4, 2003 that they "told him to prevent him

---

**29.** The September 3 decision ordered Alfredo himself to file an affidavit describing his efforts. *See A.V. by Versace,* 2002 WL 2012618, at *11. However, the Court sees no problem with him delegating this responsibility to his attorney. This is specific, however, to this issue. Alfredo should not take this as a license to file attorney affidavits in the place of his own affidavits with respect to other issues.

**30.** The label contains the phrase "Designed by Alfredo Versace." *See* Plaintiff's Ex. 32, June 30, 2003 Hearing.

[sic] from making any sales, *distribution,* having any activity bearing his name or the name of Versace in any respect whatsoever, notwithstanding what he may have done in the past with the appropriate disclosure." *See* Transcript of February 4, 2003 Status Conference at 25.

The modified preliminary injunction was clear and unambiguous that Alfredo could not use the "Versace" name in any form of commerce. There is clear, convincing and undisputed evidence that he violated that prohibition and he made no attempts whatsoever to comply with respect to this bottled water delivery. Therefore, he is in contempt of Court for this conduct.

## 2. Versace Boutique as a Business Name

 There is also no dispute as to the facts underlying this violation. Alfredo continues to use the business name "Versace Boutique," [31] in spite of the fact that he knows he is not permitted to do so. *See* June 30 Tr. at 116 ("I understand I have to write a letter and go up there and shut it down, which I did not do yet, but I will shut it."). The September 3 decision referred to his use of this business name as "a clear and explicit violation of the preliminary injunction." *See A.V. by Versace,* 2002 WL 2012618, at *5 n. 10. The modified injunction expressly forbids the use of the name. *See* PI ¶ 9.

Alfredo's promises to shut down the use of the name are unconvincing and unavailing, especially considering his history of bad faith and obfuscation. Therefore, there is clear and convincing evidence of a violation of the clear and unambiguous or-

der to cease using the business name "Versace Boutique." As such, Alfredo is in contempt of Court for this conduct. To purge himself of this contempt, he must submit an affidavit detailing all prior uses of the business name "Versace Boutique," [32] both in and out of the United States, since February 4, 1998, along with an explanation of when use of the name ceased (if it has) and the steps taken to end the use of the name.

## 3. The June 18, 2003 WNYW News Broadcast

 Finally, Gianni argues that Alfredo's appearance on the WNYW News on June 18, 2003, is "[f]ar and away the most striking new disregard for this Court's Orders." Plaintiff's Post–Hearing Memorandum of Law, July 14, 2003 ("Pl.Memo."), at 11. The Court does not agree.

The news story was entitled "Versace Name Game." *See* Videotape of the June 18, 2003 WNYW 10:00 p.m. Newscast, Plaintiff's Ex. 29, June 30, 2003 Hearing. The story gives a brief summary of this case,[33] and it shows various products that Alfredo has been associated with over the years. The labels on some of these products are visible and most, if not all, of these labels do not comply with the preliminary injunction. Alfredo also states in the telecast that he is now designing products under his first name only.

Gianni argues that the news broadcast was an attempt to promote his new logo, "Designed by Alfredo," by creating a public linkage between that name and the "Versace" name. This case, however, has generated press coverage in the past. *See,*

---

**31.** This is clear from both the accountant's reports and the financial records that defendant has provided to the Court.

**32.** This includes any business name that is a derivation of "Versace Boutique" such as "Al-

fredo Versace Boutique," "Versace Boutique, Ltd.," and "Versace Boutique, Inc."

**33.** While the summary is not inaccurate, it is certainly told from Alfredo's perspective.

*e.g.,* Steve Dunleavy, *Suits Tearing Apart Famed Clothes Clan,* N.Y. Post, Mar. 7, 2001, at 9. There is clearly some public interest in the litigation, and that interest is healthy and should not be discouraged in the open society in which we live. The public has a qualified right, of a constitutional dimension, to hear "the story" of this case. The fact that Alfredo is now preparing to market products under a new logo is certainly part of that story. Therefore, the Court takes no issue with Alfredo giving this information in an interview with a television news reporter. Similarly, Alfredo testified that the WNYW reporter asked to see samples of products from throughout his career, including before the commencement of this case. These products are also part of the story, so the fact that labels were visible on the telecast is of no significant moment.[34]

Gianni also argues that the news broadcast shows Alfredo's contemptuous attitude toward the Court because defendant states in the interview that he is going to come to the Court and state that he does not know what else he can do. This statement, however, is an accurate reflection of Alfredo's litigation posture. While the Court has not as of yet accepted his impossibility arguments, he is certainly entitled to make such arguments. The Court is not so sensitive as to be offended by Alfredo's public remarks in this regard and Gianni should not be either.[35]

### III. Remedy for Defendant's Contempt

■ The only issue left to discuss is the remedy for Alfredo's new and continuing contemptuous conduct. Throughout this litigation, despite numerous instances of violations of the preliminary injunction, Gianni's remedy requests have been relatively measured, but, as John Dryden said, "Beware the fury of a patient man." John Dryden, *Absalom and Achitophel* pt. i, L. 1005. Indeed, plaintiff now seeks a conditional jail term for Alfredo.

■ The September 3 decision set forth fully the law with respect to available remedies for civil contempt. There is no need to repeat all of it here. It is important to note, however, that the sanction imposed on a civil contemnor should be calculated to advance either, or both, of two goals: to coerce future compliance with the Court's order, or to compensate the complainant for losses stemming from the contemnor's past noncompliance. *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Perfect Fit Indus. v. Acme Quilting Co.,* 673 F.2d 53, 56–57 (2d Cir.1982). While the Court must use the least possible power sufficient to coerce compliance, *see Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), "it is nevertheless important to select a sanction which is likely to have some impact." *S.E.C. v. Margolin,* No. 92 Civ. 6307, 1996 WL 447996, at *5 (S.D.N.Y. Aug.8, 1996) (Leisure, J.). In this regard, it is well established that "[c]ivil contempt proceedings may yield a conditional jail term." *Hutto v. Finney,* 437 U.S. 678, 690–91, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Time Warner Cable of*

**34.** Furthermore, Gianni's own attorney stated that at least some of the labels are not clear on the tape. *See* June 30 Tr. at 136–37. If the viewing public was unable to read the labels, there is no issue here.

**35.** Gianni also briefly argues that there is evidence that Alfredo has not reviewed some documents that could "yield information on the sums realized from violations of the" preliminary injunction. Pl. Memo. at 13. This may be true but it is not a basis for a separate finding of contempt. Instead, it goes to whether the accountant's report is full and comprehensive.

*New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328 (E.D.N.Y.1996). Thus, a district court may imprison a civil contemnor to "compel the contemnor to do what the law made it his duty to do." *Penfield Co. of Cal. v. S.E.C.*, 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 (1947).

In light of these principles, the Court would be well within its power to order the immediate imprisonment of Alfredo until he achieves full compliance with the Court's directives. He has not shown even a modicum of reasonable efforts with respect to many of the requirements of the preliminary injunction and the September 3 decision. Instead of working toward compliance in a good faith manner, he has found new ways to earn a finding of contempt. Furthermore, coercive fines are seemingly insufficient to motivate Alfredo to purge himself of the contempt, as he completely disregarded the accrual of a $2,000 a day fine for several months.[36] There is only one conclusion to be had from all of this: His continuous disregard for the Court's orders now requires a stronger and more effective coercive sanction. This result should come as no surprise to defendant. He was previously warned that a conditional jail term would be considered, *see A.V. by Versace*, 2002 WL 2012618, at *10 ("The Court will not impose the sanction of a conditional jail term on Alfredo Versace at this time, although Alfredo Versace should be aware that the Court will consider the efficacy of such a severe sanction if his transgressions continue."), and he has obviously chosen to disregard that warning.

Despite all of this, the Court's patience, while drawing quite thin, endures. Alfredo will now have one last chance to avoid a conditional jail term. If he complies with all of the directives of this Opinion and Order within sixty days, he will have purged himself of the contempt and a further coercive sanction will not be ordered. If he does not, however, the Court will order his immediate imprisonment until such time as he is in compliance.[37]

In order to ensure that there is no question as to what he is now required to do, the Court will summarize the requirements of this decision: [38]

1. He must pay all outstanding judgments and fines against him in these cases or meet his burden of production to show that he is unable to do so. In order to show that he is unable to comply, he must submit a full and complete picture of his finances and the finances of the entities he controls. He must make this submission in an orderly fashion and with explanation. A deluge of financial documents will not suffice.

2. He must withdraw all applications for registrations of Infringing Marks and all registrations for such marks granted after February 4, 1998. He must submit a detailed affidavit regarding all of his trademark registrations and applications around the world since February 4, 1998, for any mark that includes the word "Versace." He must include the date the application was filed, the current status of the application,

---

**36.** Actually, this is not the first time that Alfredo has ignored a steadily increasing coercive fine. *See A.V. by Versace*, 2002 WL 2012618, at *11 n. 15.

**37.** If Alfredo has any doubts that the Court would actually imprison him, he should be aware that it would not be the first time that

this Court has imprisoned a party for civil contempt. *See Margolin*, 1996 WL 447996.

**38.** It is important to remember that this list is only a summary. The full width and breadth of the requirements are found in the body of this decision.

**356**

and, if the application was granted, the date on which the mark was registered. Pending applications and registrations granted after February 4, 1998, must be withdrawn forthwith.

3. He must submit an accountant's report that details his financial activity, and that of all of the entities he controls, from February 4, 1998 until September 3, 2002. He must delineate what profits were earned from activities that violated the preliminary injunction.

4. He must submit an affidavit detailing all of his uses of the business name "Versace Boutique," and the current status of those uses.

The Court recognizes that these requirements are somewhat onerous. However, they are both fair and necessary. Alfredo has put himself in this situation. He must now do the work necessary to get himself out of it. It is the hope of the Court, and no doubt plaintiff also, that he does so.

## CONCLUSION

Based on the foregoing, the Court finds that defendant remains in civil contempt of Court. He must comply with the dictates of this order within sixty calendar days of this Opinion and Order. If he does not, the Court will order a conditional jail term in order to coerce compliance.

**SO ORDERED.**